(No. 54516.—

SAWYER REALTY GROUP, INC., *et al.*, Appellants, v. JARVIS CORPORATION *et al.*, Appellees.

*Opinion filed February 2, 1982.—Rehearing denied March 25, 1982.*

Boodell, Sears, Sugrue, Giambalvo & Crowley, of Chicago (N. A. Giambalvo and Martha L. Ashenhurst, of counsel), for appellants.

Lord, Bissell & Brook, of Chicago (Robert A. Knuti and Thomas C. Walsh, of counsel), for appellees Reed Beidler *et al.*

Ruben, Kaplan & Rosen, of Skokie (Bernard M. Kaplan, of counsel), for appellees Abel R. Kaplan and Greenleaf Realty Management Co., Inc.

JUSTICE CLARK delivered the opinion of the court:

The plaintiffs, Sawyer Realty Group, Inc., *et al.*, asserted a claim against the defendants based on an alleged violation of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1977, ch. 111, par. 5701 *et seq.*; hereinafter referred to as the Brokers Licensing Act). Any claim against the named defendants Harris Trust and Savings Bank, La Salle National Bank, Jarvis Corporation, Continental Illinois National Bank and Trust Company of Chicago, and Pacific Mutual Life Insurance Company, as owners, or in any other capacity as interested parties, is not at issue here. The question for review involves count I of the plaintiffs' complaint concerning the alleged conduct of defendants Reid L. Beidler, Abel R. Kaplan, Lark Management Company, and Greenleaf Realty Management Company, Inc. (hereinafter referred to as defendants), who are real estate brokers licensed under the Brokers Licensing Act. The owners of a certain piece of real estate situated in the city of Chicago listed the property with these defendants for sale. According to the complaint, the plaintiffs, as prospective purchasers, negotiated with the defendants for the purchase of the property. The negotiations began in

November of 1978 and continued over a period of several months, ending in August of 1979. An offer of $1,675,000 dated June 4, 1979, together with an earnest money deposit of $50,000, was submitted to the defendants. Count I of the plaintiffs' complaint asserts that approximately 10 days later the offer and earnest money were returned and at that time the defendants informed the plaintiffs that the owners had sold the property to "others." Count I further asserts that shortly thereafter the plaintiffs learned from "other sources" that the property was purchased by one or both of the defendants Beidler and Kaplan, and that defendants Beidler, Kaplan, Lark, and Greenleaf made misrepresentations to and concealed information from the plaintiffs. The plaintiffs claimed that the defendants' conduct violated rules and regulations promulgated under the Brokers Licensing Act by the Department of Registration and Education pursuant to provisions of the Act. The trial court dismissed count I of the plaintiffs' complaint, which asked the circuit court of Cook County to imply a private right of action for compensatory damages. The appellate court affirmed the ruling of the trial court. (91 Ill. App. 3d 1134.) We granted plaintiffs' petition for leave to appeal from that judgment.

A motion to dismiss pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45) admits all facts well pleaded. (*Acorn Auto Driving School, Inc. v. Board of Education* (1963), 27 Ill. 2d 93, 96.) The action should not be dismissed unless it is apparent that no set of facts could be proved that would entitle the plaintiffs to relief. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187; *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298; *Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128.) The plaintiffs claim that the defendants purchased the property from the owner on terms less favor-

able than those offered by the plaintiffs. Thus for the purpose of judging the adequacy of count I of the plaintiffs' complaint, we must accept that factual allegation as true.

Section 8(a) of the Brokers Licensing Act empowers the Department of Registration and Education to make and enforce reasonable regulations in connection with the issuance, revocation and suspension of a broker's certificate (Ill. Rev. Stat. 1977, ch. 111, par. 5715(a)). The Department may suspend or revoke a certificate of registration or censure a registrant (Ill. Rev. Stat. 1977, ch. 111, par. 5732), where the registered broker is found guilty (Ill. Rev. Stat. 1977, ch. 111, par. 5732(e)) of violating published regulations promulgated by the Department to enforce the Act (Ill. Rev. Stat. 1977, ch. 111, par. 5732(e)(21)).

The Department published revised regulations in 1979. Included in that publication were rules V(A) and (C):

"V. Disclosure

(A) A registrant shall disclose to any and all purchasers, prospective purchasers, lessors or lessees and to any and all sellers, or prospective sellers, or parties to an exchange, any and all material knowledge he may have as soon as it may be practical for him so to do. This rule shall not be construed to require a registrant to violate his duties under the laws of agency.

***

(C) A registrant shall disclose to all parties in any transaction, in writing, any and all interest he or it does or may have as an owner, purchaser, seller, renter, or lessor, or otherwise in the real estate constituting the subject matter thereof or in such transaction, directly or indirectly." (Department of Registration and Education Rules and Regulations Promulgated for the Administration of the Real Estate Brokers and Salesmen License Act (1979 rev. ed.).)

These rules were duly promulgated pursuant to statutory authority. As such they have the same force and effect as

the statute. (*Brown v. Sexner* (1980), 85 Ill. App. 3d 139; *Williams v. New York Central R.R. Co.* (1949), 402 Ill. 494, 501; B. Schwartz, Administrative Law sec. 59, at 157 (1976); *United States v. Mersky* (1960), 361 U.S. 431, 437-38, 4 L. Ed. 2d 423, 429, 80 S. Ct. 459, 463.) These substantive promulgations drafted pursuant to the express language of the Brokers Licensing Act are accorded as much weight as the language the General Assembly used in defining other violations. *People ex rel. Colletti v. Pate* (1964), 31 Ill. 2d 354, 359.

For the purposes of this appeal we accept as true the plaintiffs' assertions that they relied upon the advice, recommendations and suggestions of defendants in the preparation of their offer to purchase. If, as alleged, the defendants dealt with the plaintiffs while secretly in a position personally adverse to and in conflict with that of plaintiffs and concealed material facts in failing to communicate their personal interest to purchase the property for themselves, then such actions on the part of the defendants constitute violations of sections V(A) and (C) of the rules and regulations promulgated by the Department of Registration and Education pursuant to the Act.

A broker's relationship to his employer is one of principal-agent. (*Georgacopulos v. Hruby* (1925), 316 Ill. 439; *City of Chicago v. Barnett* (1949), 404 Ill. 136; *Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867.) That fiduciary relationship of principal and agent requires full disclosure. (*Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255.) In 1928 this court held that in the absence of such a relationship there is no duty to disclose material facts. (*Fish v. Teninga* (1928), 330 Ill. 160.) That holding is no longer viable. The primary fiduciary duties that run from the broker to the seller are not undermined by the obligation the broker owes to the prospective buyer. (See *Bliesener v. Baird & Warner, Inc.* (1967), 88 Ill. App. 2d 383; *Duffy v. Setchell*

(1976), 38 Ill. App. 3d 146; *Harper v. Adametz* (1955), 142 Conn. 218, 222-23, 113 A.2d 136, 139; *United Homes, Inc. v. Moss* (Fla. App. 1963), 154 So. 2d 351.) Real estate brokers occupy a position of trust with respect to the purchasers with whom they are negotiating. Brokers owe a corresponding duty to exercise good faith and disclose any personal interest they have in property they list for sale. (See *Funk v. Tifft* (9th Cir. 1975), 515 F.2d 23, 25.) That duty is reflected in the General Assembly's imposition of enforceable obligations upon licensed brokers and salesmen. If the defendants failed to disclose their self-interest, they violated Rules V(A) and V(C) promulgated by the Department, pursuant to express statutory authority. But whether the legislature intended to enforce those obligations through private litigation under any section of this act is a separate question.

It is clear that it is not necessary to show a specific legislative intent to create a private right of action. If there is no indication that the remedies available are only those the legislature expressed in the Act, then where it is consistent with the underlying purpose of the Act and necessary to achieve the aim of the legislation, a private right of action can be implied. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172; *Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21.) The court looks to the totality of circumstances in endeavoring to discover legislative intent. *Hoover v. May Department Stores Co.* (1979), 77 Ill. 2d 93.

We agree with the plaintiffs' assertion that when a statute is enacted to protect a particular class of individuals, courts may imply a private cause of action for a violation of that statute although no express remedy had been provided. (*Rice v. Snarlin, Inc.* (1970), 131 Ill. App. 2d 434; *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152; *Montague v. George J. London Memorial Hospital* (1979), 78 Ill. App. 3d 298, 301-03.) The public policy underlying certain statutes demands

implication of a private remedy to compensate an aggrieved individual belonging to that class of persons whom the statute was designed to protect.

The terms of section 17—15 of the Election Code (Ill. Rev. Stat. 1951, ch. 46, par. 17—15) allowed any employee to excuse himself from his place of employment without a penalty or deduction in salary to vote. The court in *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, found it necessary to imply a private right of action to allow plaintiffs to recover wages deducted by their employer for the time they were absent from work. 6 Ill. 2d 152, 154.

In *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1967), 38 Ill. 2d 31, 35, we implied a private right of action in Illinois under the Federal Safety Appliance Act. The court relied upon the United States Supreme Court's decision in *O'Donnell v. Elgin, Joliet & Eastern Ry. Co.* (1949), 338 U.S. 384, 94 L. Ed. 187, 70 S. Ct. 200, that said that the failure of equipment to perform, standing alone, was itself an actionable wrong under the Act. (338 U.S. 384, 390, 94 L. Ed. 187, 192, 70 S. Ct. 200, 204.) The intent of the Act was to substitute a statutory for a common law duty and impose absolute liability for a violation of the safety code. It was necessary to ensure the safe operation of trains that a private right of action exist to compensate those injured as a result of the operation of defective car couplers. 38 Ill. 2d 31, 37-38.

Consideration of the underlying policy of the legislation and the overriding purpose of each act is important. in determining whether a private right of action exists absent specific statutory authority. In examining the public policy behind the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*), this court implied a private right of action, allowing a civil remedy for damages where an employer discharged an employee for exercising his workmen's compensation rights. (*Kelsay v.*

*Motorola, Inc.* (1978), 74 Ill. 2d 172.) The court could not accept a statutory construction that would effectively "put employees in a position of choosing between their jobs and seeking their remedies under the Act. *** [T]o prevent such anomalous results it is necessary to allow an action for retaliatory discharge." (74 Ill. 2d 172, 184.) This court in *Kelsay* found it necessary to effectuate the purpose of the Workmen's Compensation Act to imply a private right of action.

The appellate court relies upon, and both petitioner and respondent speak to, the United States Supreme Court holdings concerning implied private rights of action. The issue of implied private rights with regard to Federal legislation has been addressed by the United States Supreme Court on a number of occasions within the past two years. The court has determined that the key to its inquiry is legislative intent. *Texas Industries, Inc. v. Radcliff Materials, Inc.* (1981), 451 U.S. 630, 68 L. Ed. 2d 500, 101 S. Ct. 2061; *California v. Sierra Club* (1981), 451 U.S. 287, 68 L. Ed. 2d 101, 101 S. Ct. 1775; *Universities Research Association, Inc. v. Coutu* (1981), 450 U.S. 754, 67 L. Ed. 2d 662, 101 S. Ct. 1451; *Transamerica Mortgage Advisors, Inc. v. Lewis* (1979), 444 U.S. 11, 15, 62 L. Ed. 2d 146, 152, 100 S. Ct. 242, 245; *Touche Ross & Co. v. Redington* (1979), 442 U.S. 560, 568, 61 L. Ed. 2d 82, 91, 99 S. Ct. 2479, 2485.

This standard evolved from a test first articulated in *Cort v. Ash* (1975), 422 U.S. 66, 78, 45 L. Ed. 2d 26, 36-37, 95 S. Ct. 2080, 2088, where the Supreme Court examined four factors: (1) Is the plaintiff one of a class for whose especial benefit the statute was enacted? (2) Is there any indication of legislative intent to create or deny such a remedy? (3) Is it consistent with the underlying purpose of the legislative scheme to imply such a remedy? (4) Is the cause of action traditionally allocated to State law? The test articulated in *Sherman v. Field Clinic* (1979), 74 Ill.

App. 3d 21, 29, is not dissimilar: (1) Does the violation alleged contravene the public policy of the State? (2) Are the plaintiffs within the class the statute was designed to protect? (3) Is the injury one the statute was designed to prevent? (4) Is the need for civil actions under the statute clear? (5) Is there any indication that remedies available are limited to those enumerated in the Act?

While the United States Supreme Court has become increasingly reluctant, in construing Federal legislation, to read a private remedy into an act where an express remedy is provided for (*Transamerica Mortgage Advisors v. Lewis* (1979), 444 U.S. 11, 19, 62 L. Ed. 2d 146, 154-55, 100 S. Ct. 242, 247), our courts have continually demonstrated a willingness to imply a private remedy where there exists a clear need to effectuate the purpose of an act. *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172; *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1967), 38 Ill. 2d 31; *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152; *Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 29; *Montague v. George J. London Memorial Hospital* (1979), 78 Ill. App. 3d 298, 301-03.

Section 1 of the Brokers Licensing Act reads:

> "The intent of the legislature in enacting this statute is to evaluate the competency of persons engaged in the real estate business for the protection of the public. (Ill. Rev. Stat. 1977, ch. 111, par. 5701.)

The plain purpose is to protect the public from incapable or dishonest persons who might aid in the perpetration of fraud by establishing qualifying standards for salesmen and brokers. The State licenses those who engage in a particular trade or practice a particular profession in order to compel them to do so honestly and with integrity, excluding those who are "incompetent" or "unworthy." (*Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 551. See also *Kaplan v. Department of Registration & Education* (1977), 46 Ill. App. 3d 968; *People ex rel. State Board of Health*

*v. Apfelbaum* (1911), 251 Ill. 18.) The Act is a remedial one, and it should be broadly construed (*McKey & Poague, Inc. v. Stackler* (1978), 63 Ill. App. 3d 142). The emphasis is upon the evaluation of real estate brokers' and salesmen's fitness. (*Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, *cert. denied* (1978), 439 U.S. 926, 58 L. Ed. 2d 318, 99 S. Ct. 309.) The Real Estate Brokers and Salesmen License Act is a comprehensive licensing and registration statute designed to regulate real estate brokers and salesmen. The licensing system provides a number of methods to ensure the protection of the public in dealing with brokers and salesmen. Procedures and standards setting forth the necessary steps for qualification for a license are listed. (Ill. Rev. Stat. 1979, ch. 111, pars. 5726, 5727.) Standards for conducting business are prescribed in rules promulgated by the Department of Registration and Education and in specifically enumerated prohibited acts. (Ill. Rev. Stat. 1977, ch. 111, par. 5732.) Methods of enforcing those prescribed standards are provided. Ill. Rev. Stat. 1977, ch. 111, par. 5733 *et seq.*

The legislature also provided for certain private remedies. Under section 16(b) an aggrieved individual may file a complaint calling for an investigation by the Department of Registration and Education. (Ill. Rev. Stat. 1977, ch. 111, par. 5733(b).) Section 22 provides that a private individual may bring an action to enjoin certain unlawful activities. (Ill. Rev. Stat. 1977, ch. 111, par. 5740.) Section 8.1 establishes a real estate recovery fund which may be used to compensate aggrieved persons who are otherwise unable to satisfy valid judgments against registered real estate brokers and salesmen. (Ill. Rev. Stat. 1977, ch. 111, par. 5716.) We agree with the plaintiffs' assertion that the maxim *expressio unius est exclusio alterius*—the mention of one thing implies the exclusion of another thing—is only an aid and "should not be used to defeat the apparent intention of the legislature." (*Lehman*

*v. Hill* (1953), 414 Ill. 173, 175.) Because the legislature provided for departmental enforcement does not necessarily mean that they must not have intended to create a private right of action. The existence of an express private remedy for indemnification of limited compensatory damages (up to $10,000 per aggrieved party for actual cash losses) indicates that the General Assembly considered that private civil actions for damages would be instituted for violations of this act. However, we do not believe that the lack of any language creating a private right of action for compensatory damages under any section of the Act indicates that the General Assembly rejected such a remedy.

The potential imposition of a criminal penalty under the Workmen's Compensation Act did not preclude this court from implying a private right of action in alleviating the plight of the plaintiff in *Kelsay*. The sanctions provided for in the Brokers Licensing Act are of no help to the plaintiffs here. The express remedies available to the Sawyer Realty Group are inadequate to redress the injuries the plaintiffs have sustained.

The plaintiffs were members of the class for whose benefit the statute was enacted. Implication of a private right is consistent with the underlying purpose of the Act. The plaintiffs' injury is one the statute was designed to prevent. Implication of a civil private right of action for compensatory damages under the Brokers Licensing Act is necessary to provide an adequate remedy for self-serving, deceptive and fraudulent practices of brokers and salesmen that the Act seeks to prevent. Given these circumstances we recognize an implied private right of action for damages.

The judgments of the appellate and circuit courts are reversed, and the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*