CURTIS COOK, Plaintiff-Appellant, v. OPTIMUM/IDEAL MANAGERS INC., Defendant-Appellee.—LEE R. McTARSNEY, Plaintiff-Appellant, v. INSURANCE COMPANY OF NORTH AMERICA *et al.*, Defendants-Appellees.

Second District   Nos. 83—1039, 84—26 cons.

Opinion filed December 10, 1984.—Modified on denial of rehearing January 18, 1985.

Richard J. Smith, of Sullivan, Smith, Houser & Noonan, of Waukegan, for appellants.

Gifford, Detuno & Gifford, of Chicago, for appellee Insurance Company of North America.

John P. McAuliffe and Richard J. Leamy, both of Wiedner & McAuliffe, Ltd., of Chicago, for appellee Optimum/Ideal Managers Inc.

Alan M. Goldberg, of Rosenfeld, Rotenberg, Schwartzman, Hafron & Shapiro, of Chicago, for appellee James Ryan.

JUSTICE SCHNAKE delivered the opinion of the court:

Both of these cases present the question of whether an injured employee may bring an action in the circuit court against his employer's workers' compensation insurance company or insurance adjuster, or a physician retained by the insurance company, for failure to furnish the employee with a report of a medical examination conducted under section 12 of the Workers' Compensation Act (hereinafter the Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.12), or for improper termination of payments under the Act. The cases have been consolidated for opinion by this court.

In No. 83—1039, Curtis Cook filed a complaint in the circuit court of Lake County against his employer's insurance adjuster, Optimum/Ideal Managers Inc. (hereinafter Optimum). As amended, the complaint alleged that Cook was an employee of Waukegan Tire & Supply Co., and that he received work-related injuries on January 3 and April 27, 1983. Cook was examined at the request of his employer pursuant to section 12 of the Act on at least two occasions. According to the complaint, Optimum stopped making payments to Cook for temporary total incapacity even though Cook's doctor certified that Cook was unable to work because of his injuries. Optimum allegedly stopped paying Cook's medical bills and also refused to pay for his hospitalization, even though Cook's doctor certified that it was required by virtue of his work-related injuries. The complaint further alleged that after one of the medical examinations under section 12, Optimum directed the physician who examined Cook not to furnish him with a copy of the examination report. After another examination, Optimum obtained the report and "secreted" it so that it was not available to Cook. All of these actions were allegedly taken by Optimum to interfere with Cook in the exercise of his rights under the Act. More specifically, the actions were allegedly taken because Cook retained an attorney to represent him in connection with his claim under the Act, and because he demanded copies of the reports of medical examinations conducted pursuant to section 12. Finally, the complaint alleged that as a direct

result of Optimum's conduct, Cook suffered economic loss and was delayed in the presentation of his claim under the Act. Actual and punitive damages were sought.

Optimum moved to dismiss the complaint on the grounds that it failed to state a cause of action, and that Cook had failed to exhaust his administrative remedies before the Industrial Commission. The trial court granted Optimum's motion, and Cook appealed.

In No. 84—26, Lee R. McTarsney filed a complaint in the circuit court of Lake County against his employer's insurance company, Insurance Company of North America (hereinafter INA), and Dr. James Ryan. As amended, the complaint included three counts.

Count I was against INA. It alleged that McTarsney was an employee of Petrolane, Inc., who received a work-related injury and had been unable to work since December 29, 1981. Pursuant to section 12 of the Act, INA requested McTarsney to submit himself for an examination by Dr. Ryan on March 30, 1982. Prior to the examination, McTarsney sent Dr. Ryan a written request for a copy of the examination report. According to the complaint, however, INA directed Dr. Ryan not to comply with McTarsney's request. Dr. Ryan did not send McTarsney a copy of the report when it was prepared and mailed to INA on April 7, 1982. The complaint further alleged that INA knew that withholding the report would damage McTarsney in two ways. First, INA knew that McTarsney was facing surgery on his arm, and that his treating physicians would not have access to the report. Second, the attorney representing McTarsney before the Industrial Commission would not be able to use the information in the report to protect his legal rights.

Count I further alleged that on April 19, 1982, INA stopped making payments to McTarsney for temporary total incapacity even though he was totally disabled because of the injury and surgery. McTarsney's condition of total disability was fully substantiated by the investigation conducted by INA. The payments were allegedly terminated for the purpose of penalizing McTarsney for requesting a copy of the medical examination report.

Count I sought actual and punitive damages from INA for the withholding of the medical examination report and the improper termination of payments for temporary total incapacity.

In count II McTarsney sought injunctive relief against INA in connection with the withhholding of the medical examination report. According to the complaint, it was the policy of INA to require the physicians it retained for the purpose of conducting medical examinations under section 12 not to send copies of the report to the employee.

Count II sought an injunction ordering INA to refrain from directing physicians to withhold the reports.

Count III was against Dr. Ryan. It sought compensatory and punitive damages for his failure to turn over a copy of the report.

Dr. Ryan moved to dismiss on the basis that the exclusive remedy for the conduct complained of would be in proceedings before the Industrial Commission. That motion was granted by the trial court. Subsequently, INA filed a motion to dismiss. The motion alleged that the complaint failed to state a cause of action, and that McTarsney had failed to exhaust his administrative remedies before the Industrial Commission. INA's motion contended that the allegations concerning the medical report were moot since INA had given McTarsney a copy of the report after the lawsuit was filed. The trial court granted INA's motion to dismiss, and McTarsney brought the case to this court.

Since both cases are here on appeal from orders dismissing the complaints, all well-pleaded facts will be taken as true, and the orders of dismissal will be affirmed only if it is apparent that no set of facts could be proved that would entitle the plaintiffs to relief. *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849.

Before addressing the arguments of the parties based on the above pleadings, it will be helpful to set out the relevant provisions of section 12 of the Act which describe the nature and purposes of the medical examinations involved herein. Section 12 provides:

"An employee entitled to receive disability payments shall be required, if requested by the employer, to submit himself, at the expense of the employer, for examination to a duly qualified medical practitioner or surgeon selected by the employer, *** for the purpose of determining the nature, extent and probable duration of the injury received by the employee, and for the purpose of ascertaining the amount of compensation which may be due the employee from time to time for disability according to the provisions of this Act. ***

* * *. Such examination shall be made in the presence of a duly qualified medical practitioner or surgeon provided and paid for by the employee, if such employee so desires.

In all cases where the examination is made by a surgeon engaged by the employer, and the injured employee has no surgeon present at such examination, it shall be the duty of the surgeon making the examination at the instance of the employer to deliver to the injured employee, or his representative,

a statement in writing of the condition and extent of the injury to the same extent that said surgeon reports to the employer and the same shall be an exact copy of that furnished to the employer, said copy to be furnished the employee, or his representative as soon as practicable but not later than 48 hours before the time the case is set for hearing. \*\*\* If such surgeon refuses to furnish the employee with such statement to the same extent as that furnished the employer said surgeon shall not be permitted to testify at the hearing next following said examination." Ill. Rev. Stat. 1983, ch. 48, par. 138.12.

Prior to discussing the issues herein, it will be helpful also to review the case of *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353. In *Kelsay* our supreme court recognized a cause of action against an employer for discharging an employee in retaliation for his filing a workers' compensation claim. (See also *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143.) Punitive, as well as compensatory, damages were held to be recoverable. Such a cause of action, although not expressly provided for by our General Assembly, was deemed to be necessary to discourage the practice of retaliatory discharge which contravened the public policy of this State as expressed in the Workers' Compensation Act.

In the *Kelsay* opinion the court noted that, after the employee in that case had been fired, our General Assembly adopted section 4(h) of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.4(h)), which made it a criminal offense for an employer to discharge an employee in retaliation for filing a claim. The court stated, however, that the fact that the statute was penal in nature did not bar a civil remedy, and that where a statute is enacted for the benefit of a particular class of individuals, a violation of its terms may result in civil as well as criminal liability, even though the former remedy is not specifically mentioned.

In No. 83—1039 Cook points out that section 4(h), which has not been substantively amended since *Kelsay,* does not prohibit only retaliatory discharge. It prohibits other conduct on the part of an employer or its agents taken in retaliation for the employee's exercise of his rights under the Act. The statute provides:

"It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this

Act.

It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act." (Ill. Rev. Stat. 1983, ch. 48, par. 138.4(h).)

Cook argues that a cause of action should be implied, not only for conduct on the part of an employer which violates the second paragraph of section 4(h) involving retaliatory discharge, but also for conduct in violation of the first paragraph involving interference with an employee in connection with the exercise of his rights under the Act. Cook points out that under the Act he had a right to promptly receive the reports of the medical examinations conducted under section 12, and to representation by an attorney, and he contends that his complaint, with its allegations of retaliatory termination of compensation payments and refusal to turn over medical reports, adequately pleaded interference by Optimum in connection with his exercise of those rights.

In No. 84—26 McTarsney appears to have abandoned that portion of his complaint seeking damages from INA for retaliatory termination of payments under the Act. No mention was made of this claim in his briefs or at oral argument in this court. Accordingly, the propriety of its dismissal is not before us. McTarsney has focused his arguments on that portion of his complaint seeking injunctive relief against INA and damages from INA and Dr. Ryan based on their failure to furnish him with a copy of the report of the medical examination conducted under section 12. Unlike Cook, McTarsney did not allege that the report was withheld in retaliation for his assertion of rights under the Act. Accordingly, he does not rely on section 4(h) of the Act. Instead, McTarsney argues that a cause of action for failure to turn over the report should be implied from section 12 itself.

Finally, both Cook and McTarsney argue, citing various authorities, that the public policy of this State requires disclosure of medical information to the person involved. They maintain that a cause of action, based on the failure to furnish an employee with a copy of a report of a medical examination conducted under section 12, should be recognized in order to implement that public policy.

■ We will first address the question in No. 83—1039 of whether a cause of action should be implied from section 4(h) against an insurance adjuster for retaliatory termination of payments due under the

Act or retaliatory refusal to furnish copies of reports of medical examinations conducted under section 12.

In deciding whether a cause of action should be implied from legislation not specifically providing for it, the following questions should be considered: (1) Does the violation alleged contravene the public policy of this State? (2) Are the plaintiffs within the class the statute was designed to protect? (3) Is the injury one the statute was designed to prevent? (4) Is the need for civil actions under the statute clear? (5) Is there any indication that remedies available are limited to those enumerated in the Act? *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 389, 432 N.E.2d 849; *Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 29, 392 N.E.2d 154.

Consideration of the first three questions tends to support implication of the cause of action herein. Section 4(h) is itself a statement of the public policy of this State regarding interference with employees in the exercise of their rights under the Act and discrimination against them because of the exercise of said rights. Alleged violations of section 4(h) are contrary to that public policy. The plaintiff, Curtis Cook, is within the group the statute was designed to protect, *i.e.*, he is an employee subject to the Workers' Compensation Act. Furthermore, we believe that the injuries Cook alleged, economic loss and delay in the presentation of his workers' compensation claim, were of the sort that section 4(h) was designed to prevent.

Consideration of the fourth and fifth questions, however, works against the implied cause of action. The need under the statute for civil actions like the one brought by Cook is anything but clear. The Act itself provides numerous remedies to employees for the delay and economic loss caused by the improper conduct of which Cook complains. For example, an employee not receiving compensation may seek a preliminary award of compensation under section 19(b) (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(b)). (See *Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462, 466, 413 N.E.2d 390.) Moreover, the Act includes provisions for penalties where payment of compensation awarded, including compensation for temporary total incapacity, has been unreasonably delayed or withheld without good and just cause. (Ill. Rev. Stat. 1983, ch. 48, pars. 138.19(k) and (l).) Section 12 itself provides a remedy for the failure to turn over a copy of the medical report, *i.e.*, the employer's doctor is prevented from testifying at the hearing next following the examination. Counsel for Cook has agreed that an employee can compel production of such reports in the proceedings before the Industrial Commission by subpoena returnable at the hearing.

Moreover, there are indications that these are the exclusive remedies for the economic loss and delay caused by the conduct complained of. If we were to recognize the cause of action proposed by Cook, claimants under the Workers' Compensation Act would have two forums available to litigate the propriety of termination or reduction of payments under the Act, and to seek to compel production of the medical reports. As our supreme court stated in *Robertson v. Travelers Insurance Co.* (1983), 95 Ill. 2d 441, 451, 448 N.E.2d 866, in a slightly different context:

> "To permit such a course would invite the indefinite prolonging of litigation and risk double recoveries and inconsistent findings of fact, a result which the legislature, in enacting a system of compensation in place of common law remedies, certainly wished to avoid."

In our judgment, these considerations working against recognition of Cook's proposed cause of action under section 4(h) are more significant than any which tend to support it. Unlike the employee in *Kelsay*, Cook was not faced with the dilemma of choosing between his job and filing a claim under the Act. In fact, Cook did not allege that any of the misconduct on the part of Optimum was undertaken to coerce him into withdrawing his claim, or to punish him for filing the claim itself. Unlike retaliatory discharge, the alleged misconduct on the part of the insurance adjuster in this case would not "effectively [relieve] the employer of the responsibility expressly placed upon him by the legislature ***." (*Kelsay v. Motorola* (1978), 74 Ill. 2d 172, 182, 384 N.E.2d 353.) Under these circumstances, and where remedies for the damage caused by the alleged misconduct are available in proceedings under the Act, we do not believe that a cause of action in the circuit court should be implied from section 4(h).

■ We next consider the question in No. 84—26 of whether a cause of action should be implied from section 12 against an insurance company or a doctor retained by it for failure to turn over a copy of a report of a medical examination. McTarsney alleged that the withholding of the report damaged him in two ways. First, it prevented the attorney representing him in the workers' compensation proceedings from using the information in the report to protect his legal rights. As noted above, however, the Workers' Compensation Act itself provides remedies for such damage available in the proceedings before the Industrial Commission. We conclude, as we did above, that these are the exclusive remedies for that claim of damage.

The second way McTarsney alleged that he was damaged by the withholding of the report was that his treating physicians did not

have access to it. The remedies discussed above do little to alleviate this problem. The exclusion of the testimony of the employer's doctor does nothing to remedy the ignorance of the employee's treating physician of the contents of the report. Moreover, if the injury is such that prompt treatment is required, proceedings before the Industrial Commission to compel production of the report might take too long to be of any use to the treating physician.

Notwithstanding these inadequacies of the remedies under the Act in alleviating this alleged injury, we do not believe that McTarsney's proposed cause of action should be implied from section 12 because the injury is not one which the statute was designed to prevent. (See *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849.) Section 12 is essentially a prehearing discovery rule governing proceedings before the Industrial Commission. It provides that the purpose of the medical examination is for "determining the nature, extent and probable duration of the injury received by the employee," and "ascertaining the amount of compensation which may be due the employee from time to time for disability according to the provisions of this Act." The examination under section 12 is not for the purpose of providing the employee's own treating physician with additional information. This court will not, without a clearer statement of legislative intent, convert violation of a prehearing discovery rule into a tort.

Finally, we consider the issue common to both cases of whether a cause of action, based on the failure to furnish an employee with a copy of a report of a medical examination conducted under section 12, should be recognized in order to implement the public policy of this State regarding disclosure of medical information. Both Cook and McTarsney cite *Cannell v. Medical & Surgical Clinic, S.C.* (1974), 21 Ill. App. 3d 383, 315 N.E.2d 278, to support their view that public policy requires disclosure of medical information to the person involved. In *Cannell* the court held that a doctor hired by the employer to treat the employee had a fiduciary relationship with the latter which imposed a duty on the doctor to turn over the patient's medical records to him on request. We do not believe that the concept of a fiduciary relationship can be extended from a patient and his treating physician to an employee and a doctor hired by his employer to examine him under section 12. Our supreme court has stated that a fiduciary duty may arise from "all legal relations, such as attorney and client, principal and agent, guardian and ward, and the like, and also every case in which a fiduciary relation exists in fact, where confidence is reposed on one side and domination and influence result on the other." (*Wen-*

*nerholm v. Wennerholm* (1943), 382 Ill. 254, 262, 46 N.E.2d 939.) While a patient certainly reposes confidence in his treating physician, the same cannot be said of an employee and a physician retained by the employer, not to treat the employee, but to examine him with reference to a pending workers' compensation claim. Moreover, where the employee has other physicians treating his injury as in the instant cases, it is difficult to see how the "section 12 physician" would have domination and influence over him.

Cook and McTarsney also cite section 8—2003 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 8—2003), which requires physicians to make their patients' medical records available to them. That provision is, however, explicitly limited to treating physicians.

Finally, Cook and McTarsney cite *Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 439 N.E.2d 60, in which this court held that the existence of a physician-patient relationship was not necessarily required in order for there to be a duty of reasonable care, including a duty of disclosure of medical information, on the part of the physician. The determination of whether such a duty exists was held to require a weighing of the factors of foreseeability of subsequent occurrences, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the doctor.

The physician in *Davis* had agreed to see the patient on referral from another doctor for purposes of treatment. The doctor who agreed to see the patient allegedly knew that X rays had disclosed that the latter might have cancer. An appointment was made and rescheduled, and the patient was unable to appear for the rescheduled appointment. When he so advised the doctor's office, he was informed that the doctor would not treat him. The doctor, however, did not advise him of the malignancy, or of the urgency of seeking treatment elsewhere. As a result, the cancer grew worse, and the patient's leg had to be amputated. Weighing the factors set forth above, this court determined that, under these circumstances, the doctor had owed a duty to the patient to inform him of the problem.

*Davis* is distinguishable, however, because the doctor in that case had agreed to see the patient for purposes of care and treatment, not for purposes of examination on behalf of the patient's adversary in pending litigation. Where the examination is for the latter purpose, and where, as here, the patient has other treating physicians, the foreseeability and likelihood of injury resulting from withholding the examination report is insubstantial. Although the magnitude of the burden in guarding against such injury, *i.e.*, turning over the report, is also slight, we do not believe that a duty of care should be recog-

nized under these circumstances. Other courts have reached similar conclusions. (See *Keene v. Wiggins* (1977), 69 Cal. App. 3d 308, 138 Cal. Rptr. 3; and *Johnston v. Sibley* (Tex. Civ. App. 1977), 558 S.W.2d 135.) Public policy does not support recognition of the cause of action proposed herein.

This court does not approve of the withholding of medical reports in these cases. Section 12, which is essentially a prehearing discovery rule, requires their disclosure "as soon as practicable." Discovery is intended to be a mechanism for the ascertainment of truth. It is not a tactical game to be used to obstruct the opposing litigant. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 282, 433 N.E.2d 253.) It may be that our General Assembly should consider whether it would be appropriate to provide the Industrial Commission with stronger sanctions for violation of section 12. For the reasons stated above, however, we do not believe that a cause of action in the circuit court should be recognized for its violation.

The orders of the circuit court of Lake County dismissing the complaints herein are, therefore, affirmed.

No. 83—1039: Judgment affirmed.

No. 84—26: Judgment affirmed.

HOPF and REINHARD, JJ., concur.