# Illinois Official Reports

## Appellate Court

---

### *Sandler v. Sweet*, 2017 IL App (1st) 163313

---

| | |
|---|---|
| Appellate Court Caption | PHILIP W. SANDLER, Plaintiff-Appellant, v. JERRY J. SWEET, Ph.D., NORTH SHORE MEDICAL GROUP, and NORTH SHORE UNIVERSITY HEALTH SYSTEM, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-3313 |
| Filed | August 4, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-62008; the Hon. Roger G. Fein, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ronald L. Bell, of Ronald L. Bell & Associates, P.C., of Libertyville, for appellant.<br><br>Kevin J. Clancy, Andrea H. Kott, and Joseph E. Comer, of Lowis & Gellen LLP, of Chicago, for appellees. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Rochford and Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1   The plaintiff, Philip W. Sandler, brought this action against the defendants, Jerry J. Sweet, Ph.D., North Shore Medical Group, and North Shore University Health System, alleging medical negligence, common law fraud, and breach of fiduciary duty. The circuit court granted the defendants' motion to dismiss, finding that no physician-patient relationship existed and, therefore, no duty of care was owed to the plaintiff. The court subsequently denied the plaintiff's motion for leave to file a second amended complaint. For the reasons that follow, we affirm.

¶ 2   The following facts are derived from the various pleadings, which we accept as true in the context of a motion to dismiss. See *Wackrow v. Niemi*, 231 Ill. 2d 418, 420 (2008).

¶ 3   This case arises directly out of a medical negligence action that the plaintiff filed in the circuit court of Cook County (case No. 09 L 08290) against Advocate Good Samaritan Hospital (Advocate). In that case, the plaintiff sought damages for a brain injury he allegedly sustained after attempting suicide while receiving inpatient psychiatric treatment at Advocate. During the course of that litigation, Advocate retained Dr. Sweet, a board certified clinical psychologist and neuropsychologist, as a controlled expert under Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2007).

¶ 4   In February 2012, Dr. Sweet conducted a neuropsychological evaluation of the plaintiff to determine the nature and extent of his alleged brain injury. Dr. Sweet prepared a written report of his findings and opined that the plaintiff did not suffer a brain injury as a result of his suicide attempt at Advocate. Two years later, in February 2014, Dr. Sweet issued a supplemental report based upon his review of additional medical records. The doctor acknowledged that the additional medical records noted "consideration of brain dysfunction in the form of hypoxic ischemic encephalopathy," but stated that his opinion remained the same. Specifically, he stated that the plaintiff "does not have a cognitive disability, does not have acquired brain dysfunction[,] *** [and] does not show evidence of executive dysfunction."

¶ 5   On February 4, 2016, the plaintiff filed the instant action against Dr. Sweet and his employers, North Shore Medical Group and North Shore University Health System. The plaintiff's amended complaint sought recovery on theories of medical negligence (count I), common law fraud (count II), and breach of fiduciary duty (count III), all of which are based exclusively upon Dr. Sweet's original and supplemental reports provided in conjunction with the plaintiff's underlying litigation against Advocate. The plaintiff alleged that Dr. Sweet failed to correctly diagnose his brain injury, which caused him harm because he failed to seek "treatment and rehabilitation, which could have enhanced his quality of life."

¶ 6   In June 2016, the defendants filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2016)), contending that Dr. Sweet enjoys an absolute privilege from civil liability for any statements he made during the course of the underlying judicial proceedings. Alternatively, the defendants argued that no physician-patient relationship exists between Dr. Sweet and the plaintiff and, therefore, Dr. Sweet owed no duty of care to the plaintiff. In support of their motion, the defendants attached as Exhibit B, a transcript of Dr. Sweet's deposition testimony in the underlying case, in which he stated that he was retained as an expert witness by counsel for Advocate.

¶ 7    In response, the plaintiff maintained that the doctrine of absolute privilege applies only to experts appointed by the court pursuant to Illinois Supreme Court Rule 215 (eff. Mar. 28, 2011), and is limited to statements the expert made while testifying at a deposition or at trial. According to the plaintiff, because his claims are based upon statements made in Dr. Sweet's written reports, and because Dr. Sweet authored those reports before Advocate disclosed him as a "controlled expert" under Illinois Supreme Court Rule 213(f)(3), Dr. Sweet is not immune from civil liability. The plaintiff also disputed the defendants' assertion that no physician-patient relationship existed between himself and Dr. Sweet.

¶ 8    On August 4, 2016, the circuit court entered a written order, dismissing the plaintiff's amended complaint with prejudice. The court observed that Dr. Sweet was retained by Advocate, the plaintiff's adversary in the underlying medical malpractice case, and his role was limited to evaluating the nature and extent of the plaintiff's alleged brain injury. The court further noted that Dr. Sweet was not sought out by the plaintiff or by any other physician caring for the plaintiff, did not report to the plaintiff, and was not involved in the plaintiff's care or treatment. The court concluded, therefore, that no physician-patient relationship existed and Dr. Sweet owed no duty of care to the plaintiff.[1] On September 1, 2016, the plaintiff filed a motion for reconsideration and a motion for leave to file a second amended complaint, which the circuit court denied. This timely appeal followed.

¶ 9    A section 2-619 motion to dismiss admits the legal sufficiency of the plaintiff's claim but asserts that certain defects or defenses exist outside of the pleadings which defeat the claim. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. In reviewing a section 2-619 motion, the court is obligated to construe the pleadings and supporting documents in the light most favorable to the nonmoving party, and to accept as true all well-pleaded facts in the plaintiff's complaint. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21. We review an order granting a section 2-619 motion *de novo*. *Id.*

¶ 10    The plaintiff's first contention on appeal is that the circuit court erred in dismissing count I of his amended complaint, which alleged that Dr. Sweet was medically negligent for failing to diagnose him with a brain injury. We disagree.

¶ 11    In a negligence action for medical malpractice, the plaintiff's complaint must allege facts that are sufficient to show "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525 (1987). Whether a duty exists is a question of law to be determined by the court. *Id.* In determining whether a duty exists in a particular case, a court will consider "the foreseeability of the plaintiff's injury, the likelihood of the occurrence, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." *Doe v. McKay*, 183 Ill. 2d 272, 278 (1998). Our supreme court has stated that a physician's duty is limited to situations in which a direct physician-patient relationship exists or there is a special relationship between the patient and the plaintiff. *Id.* at 279 (citing *Kirk*, 117 Ill. 2d at 529-32).

---

[1] Although the circuit court agreed with the defendants' assertion that Dr. Sweet's neuropsychological examination of the plaintiff was conducted "during judicial proceedings," the court nevertheless stated that it was not granting the defendants' motion to dismiss on the basis of absolute privilege.

¶ 12    In this case, the major point of contention on the plaintiff's medical negligence claim is whether Dr. Sweet, an expert witness retained by the plaintiff's adversary in pending litigation, owed a legal duty to the plaintiff. In resolving the question of duty, we consider the readily analogous cases of *Cook v. Optimum/Ideal Managers Inc.*, 130 Ill. App. 3d 180 (1984), and *In re Detention of Duke*, 2013 IL App (1st) 121722.

¶ 13    In *Cook*, 130 Ill. App. 3d at 182, the plaintiff, a claimant in a workers' compensation case, was examined by a physician retained by his employer. When the physician refused to furnish the plaintiff with a report of the medical examination, the plaintiff filed suit, alleging that the withholding of the report damaged him because his treating physicians did not have access to it. *Id.* at 187-88. On appeal, the court held that the physician did not owe a duty of care to the plaintiff, including a duty to disclose medical information. *Id.* at 189. The court explained that the physician did not agree to see the plaintiff for purposes of care and treatment, but rather for purposes of an examination on behalf of the plaintiff's adversary in pending litigation. The court further noted that the plaintiff had other treating physicians and determined the foreseeability and likelihood of injury resulting from withholding the examination report was "insubstantial." *Id.* Although the magnitude of the burden in guarding against such injury was "slight," the court nonetheless concluded that a duty of care should not be recognized under these circumstances. *Id.* at 189-90.

¶ 14    In *Duke*, 2013 IL App (1st) 121722, ¶¶ 1, 7, the plaintiff filed a medical negligence counterclaim against a court-appointed forensic psychiatrist, alleging that she improperly diagnosed and treated him as a sexual sadist. Affirming the dismissal of the plaintiff's medical negligence counterclaim, the appellate court held that no physician-patient relationship existed between the plaintiff and the forensic psychiatrist. We reasoned that:

> "The relationship between Dr. Buck and plaintiff is not a therapeutic relationship. Rather, Dr. Buck is a medical expert for the State, a forensic psychiatrist who interviewed plaintiff for purposes of the petition under the [Sexually Violent Persons Commitment] Act. During oral argument, it was elicited from plaintiff's counsel that Dr. Buck is not a treating doctor for plaintiff. Plaintiff also admits this in his notice of appeal ***. Without such a therapeutic relationship, Dr. Buck has no duty of care to plaintiff; she is an expert for the State without a duty to plaintiff and plaintiff's counterclaim was properly dismissed." *Id.* ¶ 19.

¶ 15    Similarly here, it is clear from the pleadings that the plaintiff was not Dr. Sweet's patient. As the circuit court correctly noted, Dr. Sweet was not sought out by the plaintiff or by any other physician caring for the plaintiff, did not report to the plaintiff, and was not involved in the plaintiff's care or treatment. Rather, Dr. Sweet was retained as an expert witness by Advocate, the plaintiff's adversary in pending litigation, and his role was limited to evaluating the nature and extent of the plaintiff's alleged brain injury. Although Dr. Sweet may have employed medical techniques in examining the plaintiff, it is plain that no medical treatment was intended or in fact provided. The neuropsychological exam was conducted simply as a disclosure device in litigation and, indeed, one whose benefit inured not to the plaintiff but to the plaintiff's adversary. Because physicians conducting medical examinations at the request of third parties assume a fundamentally different role from treating physicians (see *Johnston v. Weil*, 396 Ill. App. 3d 781, 787 (2009)), no physician-patient relationship exists between Dr. Sweet and the plaintiff and, therefore, Dr. Sweet owed no duty of care to the plaintiff.

¶ 16    In so holding, we decline the plaintiff's invitation to follow case law from other jurisdictions, which recognize that a "limited physician-patient relationship" exists where a physician performs an independent medical examination at the request of a third party. See *Ritchie v. Krasner*, 211 P.3d 1272, 1280 (Ariz. Ct. App. 2009); *Greenberg v. Perkins*, 845 P.2d 530, 533 (Colo. 1993) (*en banc*) (a physician conducting an independent medical examination has a duty to perform the examination in a manner that does not cause physical harm to the examinee).

¶ 17    As discussed above, the Illinois Supreme Court has clearly stated that a plaintiff cannot maintain a medical negligence cause of action absent a direct physician-patient relationship with the defendant unless a special relationship exists between a patient and the plaintiff. *Kirk*, 117 Ill. 2d at 531; *Doe*, 183 Ill. 2d at 279. Indeed, our supreme court reaffirmed the "long-established principles in *Kirk* and *Doe*" and declined to expand the scope of the physician-patient relationship to nonpatient third parties. See *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 172 (2009). Given the Illinois Supreme Court's reluctance to expand the scope of physician-patient relationship to nonpatient third parties, we similarly decline the plaintiff's invitation to recognize a "limited physician-patient relationship" in this case.

¶ 18    We note that this conclusion is in accord with the majority of other courts that have considered this issue and held that an independent medical examination performed at the behest of a third party does not give rise to a physician-patient relationship or to medical malpractice liability. See, *e.g.*, *Smith v. Radecki*, 238 P.3d 111, 117 (Alaska 2010) (citing cases and concluding that the vast majority of courts have not found a duty); *Felton v. Schaeffer*, 279 Cal. Rptr. 713, 716-17 (Ct. App. 1991) (citing cases); *Martinez v. Lewis*, 969 P.2d 213, 219-20 (Colo. 1998) (*en banc*) (citing cases).

¶ 19    In further support of his argument that Dr. Sweet owed him a duty of care, the plaintiff cites to the American Medical Association's Code of Ethics as well as journal articles authored by Dr. Sweet in which he purportedly concedes that a psychiatrist owes a duty of care when performing a psychological exam as a retained expert. We are not persuaded. The determination of whether Dr. Sweet owed a duty of care to the plaintiff is a question of law, not a question of medical ethics. Moreover, the plaintiff's reliance on Dr. Sweet's opinions about duty of care—as expressed in his journal articles—transcends the bounds of his competence and intrudes on the exclusive province of the court. See *Reynolds v. Decatur Memorial Hospital*, 277 Ill. App. 3d 80, 86 (1996) ("Plaintiffs may not, in the guise of offering expert medical opinion, arrogate to themselves a judicial function and obviate a ruling on the existence of or extent of a legal duty which might be owed by a physician to a patient."). As a consequence, the secondary sources cited by the plaintiff are not dispositive of this case.

¶ 20    In sum, we conclude that no physician-patient relationship exists, and thus, no duty of care could have extended from Dr. Sweet to the plaintiff. As a consequence, the circuit court properly dismissed count I of the amended complaint alleging medical negligence against Dr. Sweet.

¶ 21    We next consider the plaintiff's argument that the circuit court erred in dismissing his breach of fiduciary duty claim as pled in count III of his amended complaint. In response, the defendants maintain that the plaintiff's claim was properly dismissed because it is duplicative of his medical negligence claim. We agree with the defendants.

¶ 22    In *Neade v. Portes*, 193 Ill. 2d 433, 444-45 (2000), our supreme court stated that the elements of breach of fiduciary duty overlap with those of medical negligence to such an extent that the former claim would "boil down" to the latter in any case arising out of the same operative facts. Because the elements are closely related, the court held that, if both claims are derived from the same operative facts and result in the same injury, the breach of fiduciary duty claim should be dismissed as duplicative. *Id.*

¶ 23    In this case, the operative facts of both the plaintiff's medical negligence claim and his breach of fiduciary duty claim are based exclusively upon statements made in Dr. Sweet's original and supplemental reports. Both claims allege that Dr. Sweet failed to correctly diagnose the plaintiff's brain injury and that the plaintiff was harmed because he failed to seek "treatment and rehabilitation, which could have enhanced his quality of life." Distilled to their essence, both counts are based upon the same operative facts and the breach of fiduciary duty claim alleges no facts and no injury beyond those alleged in the medical negligence claim. Accordingly, the plaintiff's breach of fiduciary duty claim is duplicative of his medical negligence claim and was properly dismissed by the circuit court.

¶ 24    Lastly, the plaintiff argues that the circuit court erred by dismissing count II of his amended complaint, which alleged common law fraud.

¶ 25    Before proceeding to the merits, we note that the circuit court dismissed the plaintiff's amended complaint based upon its finding that Dr. Sweet owed no duty of care to the plaintiff. While this may have been a proper basis to dismiss the medical negligence and breach of fiduciary duty claims, it was not a proper basis to dismiss the plaintiff's common law fraud claim, since duty of care is not an element of the cause of action. See *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996) (setting forth the five elements of common law fraud). Nevertheless, because our review is *de novo*, we may affirm the circuit court's judgment on any basis in the record, regardless of the circuit court's reasoning. *Beacham v. Walker*, 231 Ill. 2d 51, 60-61 (2008). We, therefore, address the parties' disagreement as to whether Dr. Sweet is immune from civil liability.

¶ 26    As a general rule, witnesses enjoy an absolute privilege from civil suit for statements made during judicial proceedings. *Ritchey v. Maksin*, 71 Ill. 2d 470, 476 (1978). The purpose of the rule is to preserve the integrity of the judicial process by encouraging full and frank testimony. *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 969 (1991). In *Jurgensen v. Haslinger*, 295 Ill. App. 3d 139, 141-42 (1998), the court explained:

> "The doctrine of absolute privilege rests upon the idea that conduct that otherwise would be actionable is permitted to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to an injured party. [Citation.] Absolute privilege provides complete immunity from civil action, even though the statements are made with malice, because public policy favors the free and unhindered flow of information. [Citations.] In the absence of such a privilege, a witness might be reluctant to come forward to testify, or, once on the stand, the witness's testimony might be distorted by the fear of subsequent liability. [Citation.]"

Not all statements, however, are encompassed by the doctrine of absolute privilege. Rather, only statements that are "pertinent and material to the matter in controversy" are entitled to absolute privilege. *Spaids v. Barrett*, 57 Ill. 289, 291 (1870); *Macie v. Clark Equipment Co.*, 8 Ill. App. 3d 613, 615 (1972).

- 6 -

¶ 27     In this case, the plaintiff contends that his claims are premised on the reports that Dr. Sweet prepared *prior* to his testimony and, as a consequence, the statements were not made in a "judicial proceeding." He also argues, as he did before the circuit court, that the doctrine of absolute privilege is limited to "court appointed or court mandated" experts and that Dr. Sweet was not a court-appointed expert at the time he authored the reports. We find that none of these arguments have merit.

¶ 28     To begin with, courts in Illinois recognize that the doctrine of absolute privilege is not limited to what a witness may say under oath while on the witness stand. *McNall v. Frus*, 336 Ill. App. 3d 904, 907 (2002) (stating that "nontestimonial acts performed outside the courtroom have been protected in Illinois"). The privilege has been extended to statements made prior to initiation of judicial proceedings (*Parrillo, Weiss & Moss v. Cashion*, 181 Ill. App. 3d 920 (1989)), to out-of-court communications between attorney and client related to pending litigation (*Weiler v. Stern*, 67 Ill. App. 3d 179 (1978)), and to postlitigation statements an attorney made to a client (*Golden v. Mullen*, 295 Ill. App. 3d 865, 870-71 (1997)).

¶ 29     In our view, absolute privilege must extend to reports prepared by an expert witness that form the basis of the witness's testimony. If we held otherwise, the policies underlying such immunity would be undermined. Indeed, an expert's courtroom testimony is the last act in a long, complex process of evaluation and consultation with the litigant. There is no way to distinguish the testimony from the acts and communications on which it is based. See *Kahn v. Burman*, 673 F. Supp. 210, 212 (E.D. Mich. 1987) ("Physicians' reports are so inextricably intertwined with medical malpractice actions that it would be illogical to hold that such reports are not 'relevant' to the underlying judicial proceedings."). Unless the whole, integral enterprise falls within the scope of immunity, the chilling effect of threatened litigation will result in the adverse effects described above, regardless of the immunity shielding the courtroom testimony. As a consequence, the absolute privilege of an expert witness extends not only to his or her testimony, but also to acts and communications that occur in connection with the preparation of that testimony. Any other rule would be unrealistically narrow, would not reflect the realities of litigation, and would undermine the gains in forthrightness on which the rule of absolute privilege rests.

¶ 30     The plaintiff also asserts that "[i]t is abundantly clear only court appointed or court mandated experts in Illinois enjoy absolute immunity." He cites *Davidson v. Gurewitz*, 2015 IL App (2d) 150171, in support of his contention. *Davidson*, however, does not stand for such a proposition. In fact, the court in *Davidson* found that the defendant, an attorney, was absolutely immune from liability related to his services as a child representative in a child custody proceeding. *Id.* ¶¶ 10, 16. Nowhere in *Davidson* did the court state that absolute immunity was limited to "court appointed" or "court mandated" experts.

¶ 31     In any case, we find the decision in *McNall*, 336 Ill. App. 3d at 906-07, to be instructive. In that case, the plaintiff filed a negligence action against the defendant, an expert witness, who testified in a child custody proceeding that the plaintiff suffered from alcoholism and was a neglectful parent. *Id.* at 905. On appeal, the court held that the defendant was immune from civil liability on grounds of absolute privilege. *Id.* at 906-07. In so holding, the court rejected the plaintiff's assertion that an exception should be made for experts retained by an adverse party pursuant to Rule 213. The court noted that the doctrine of absolute privilege is broad in scope, that the doctrine has been "liberally protected" by Illinois courts, and that an expert-witness exception to the doctrine would require the court to "break with Illinois

- 7 -

precedent *** [and] go beyond the most far-reaching precedents in any jurisdiction." *Id.* at 907.

¶ 32     We agree with the decision in *McNall* and see no reason to depart from its holding. The fact that Dr. Sweet was retained by an adverse party, as opposed to being appointed by the court, should not deprive him of immunity. Under either circumstance, the fact remains that Dr. Sweet is a participant in a judicial proceeding, and it is that status on which absolute privilege rests. See *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983) (the purpose of granting absolute privilege to participants in judicial proceedings is to preserve and enhance the judicial process). In this light, it is immaterial that an expert witness is retained by a party rather than appointed by the court. The basic policy of ensuring frank and objective testimony should prevail regardless of how the witness comes to court.[2]

¶ 33     In this case, the only wrongful conduct alleged in the plaintiff's amended complaint arose out of Dr. Sweet's written reports, in which he opined that the plaintiff did not suffer a brain injury. Because the reports were prepared during the course of the plaintiff's underlying medical malpractice case against Advocate, and since there is no dispute that the statements contained in the reports were pertinent and material to the underlying judicial proceeding, such statements are absolutely privileged. We conclude, therefore, that Dr. Sweet is immune from civil suit based upon the statements made in the written reports prepared during the judicial proceedings and the circuit court did not err in dismissing the plaintiff's common law fraud claim.

¶ 34     Having found that the circuit court did not err in dismissing the plaintiff's medical negligence, breach of fiduciary duty, and common law fraud claims against Dr. Sweet, we also affirm that portion of the court's order dismissing the same three claims against North Shore Medical Group and North Shore University Health System, since those claims are derivative and necessarily dependent upon the claims against Dr. Sweet. See *Kirk*, 117 Ill. 2d at 533.

¶ 35     Finally, the plaintiff argues that the circuit court abused its discretion when it denied him leave to file a second amended complaint. In his proposed pleading, the plaintiff seeks to delete the allegation that Dr. Sweet was retained as a controlled expert witness under Rule 213(f)(3).

¶ 36     A circuit court has broad discretion in determining whether to allow an amendment to a complaint, and its ruling on the matter will not be disturbed on review absent an abuse of that discretion. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 69. This court applies four factors in determining whether the circuit court abused its discretion in denying a party's motion to amend, namely, (1) whether the proposed amendment would cure the defective pleading, (2) whether the other parties would sustain prejudice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether the moving party had previous opportunities to amend. *Id.* In this case, our focus is upon the first factor.

---

[2]The plaintiff devotes a significant portion of his brief to Dr. Sweet's status at the time he authored his reports. While his amended complaint plainly states that Dr. Sweet was retained as a "controlled expert witness," the plaintiff now maintains that Dr. Sweet was merely a "consultant" or "independent medical examiner." These distinctions are irrelevant. Witness immunity exists in order to halt the chilling effect of the threat of subsequent litigation. The threat of subsequent litigation is the same regardless of whether Dr. Sweet was appointed by the court, retained by the plaintiff's opponent, or whether he served as a "controlled expert," "independent medical examiner," or "consultant."

¶ 37     Here, the plaintiff's proposed amendment does not cure the defect in his pleading. In support of their section 2-619 motion to dismiss, the defendants attached a transcript of Dr. Sweet's deposition testimony in which he stated that he was retained as an expert witness by Advocate. The plaintiff's proposed amendment, seeking to remove the allegation that Dr. Sweet was retained as a controlled expert witness, cures nothing. Because the plaintiff's proposed amendment adds no facts that would cure defects in the pleading, we cannot say that the circuit court abused its discretion in denying the plaintiff's motion for leave to file a second amended complaint. See *McNall*, 336 Ill. App. 3d at 907-08 (circuit court did not abuse its discretion where the proposed amendment simply restated the allegations in the original complaint).

¶ 38     For the foregoing reasons, we affirm the judgment of the circuit court, which dismissed the plaintiff's amended complaint with prejudice and denied his motion to file a second amended complaint.

¶ 39     Affirmed.