**Jenny SOTO, Administratrix of the Estate of Nelson Soto, Deceased**

v.

**FRANKFORD HOSPITAL and Dr. Christine Hashimoto and Javad Abdollahian, M.D. and Dr. Merylee E. Werthan and Dr. William A. Haeberle.**

Civ. A. No. 79–2092.

United States District Court,
E. D. Pennsylvania.

Oct. 23, 1979.

Leon Silverman, Elias H. Stein, Philadelphia, Pa., for plaintiff.

A. Arthur Hanamirian, Philadelphia, Pa., for Javad Abdollahian, M.D., and Dr. William A. Haeberle.

David Griffith, Philadelphia, Pa., for Frankford Hosp.

Daniel German, Philadelphia, Pa., for Hashimoto.

Jay Lambert, Philadelphia, Pa., for Werthan.

## MEMORANDUM OPINION

WEINER, District Judge.

On June 8, 1979, plaintiff, in her capacity as administratrix of the estate of her deceased husband, initiated this action against the defendants, claiming that the negligence of the defendants caused her husband's death. This is the third action brought by the plaintiff against the defendants.

The first action was filed in this court on October 27, 1977, and an amended complaint was filed on December 30, 1977.[1] In that action, the plaintiff sued individually and as administratrix of the estate of her deceased husband. The named defendants were John Mattiaccio, Philadelphia Gas Works, Dr. Santiago, and the same five medical defendants named in the case *sub*

---

1. Civil Action No. 77–3697.

*judice.* The plaintiff alleged that on November 3, 1976, she was rendered unconscious while she and her husband were tenants of premises owned by John Mattiaccio, as a result of inhaling carbon monoxide caused from a leak in a defective gas heater. Plaintiff further alleged that she received emergency care at defendant Frankford Hospital, and was admitted to the intensive care unit of said hospital, with an incorrect diagnosis of drug overdose, she was treated at the hospital and signed herself out prior to being discharged; that her husband who was never a patient or treated by any of the defendants was rendered unconscious on November 30, 1976, as a result of carbon monoxide inhalation; and that said carbon monoxide poisoning caused her husband's death.

At the time the action in C.A. No. 77–3697 was filed, the defendants questioned whether the plaintiff was required to submit her claim to the Arbitration Panels for Health Care, pursuant to the "Health Care Services Malpractice Act", 40 P.S. § 1301.-101 et seq., as a prerequisite to instituting an action in Court.

In order to preserve her cause of action, in December, 1977, plaintiff instituted a second proceeding against these defendants in the Philadelphia Arbitration Panels for Health Care, No. M77–0420.

After a pre-trial conference in C.A. 77–3697, on March 30, 1978, we dismissed with prejudice defendants Christine Hashimoto, M.D. and Merylee E. Werthan, M.D.[2] Also on that date an Order was entered dismissing with prejudice defendant William A. Haeberle, M.D. based upon a finding that there was no evidence of medical malpractice. On April 18, 1978, defendants Frankford Hospital, Francesco Santiago, M.D., and Javad Abdollahian, M.D. were dismissed with prejudice because of lack of jurisdiction.

The case then proceeded to trial against the remaining defendants, Mattiaccio and Philadelphia Gas Works. On April 20, 1978

the case was settled and dismissed with prejudice.

Presently before the Court are the motions of the defendants to dismiss the instant action based upon the doctrine of res judicata and the failure of the plaintiff to state a cause of action. For the reasons to follow, we shall grant the motions to dismiss.

Plaintiff seeks to hold the named defendants responsible for the death of her husband on the theory that because the defendants allegedly incorrectly diagnosed her condition upon her admission to Frankford Hospital, she was not alerted to take appropriate steps to have the defective gas heater repaired, and that the failure to warn was the proximate cause of her husband's death. In support of her theory, the plaintiff has directed our attention to five state court cases dealing with the liability of physicians for injuries to persons who are not patients. After careful review of each case, we have concluded that they are not supportive of the theory the plaintiff advances. The facts of the cases the plaintiff has cited are summarized as follows.

In the first case cited, *Hofmann v. Blackmon*, 241 So.2d 752 (Dist. Ct. of App., Fla. 1970), a father and his minor child brought an action against the executrix of the estate of a physician who allegedly negligently failed to diagnose tuberculosis in the father resulting in the child contracting the disease. In a one page opinion the court held that the physician owed a duty to the child and that duty was to be discharged by informing those charged with the minor's well being of the nature of the contagious disease and the precautionary steps to be taken to prevent the child from contracting such disease.

*Jones v. Stanko*, 118 Ohio St. 147, 160 N.E. 456 (1928) was a similar case, where a physician failed to diagnose a contagious disease, and consequently, failed to notify public health officials and those known to

---

**2.** The Order dismissing Merylee E. Werthan, M.D. stated that dismissal was based on her deposition testimony.

come in contact with the patient of the danger of contracting said disease. The court also noted that Section 4427 of the Ohio General Code required the reporting of such diseases to public health officials.

Also cited is *Kaiser v. Suburban Transportation System*, 65 Wash.2d 461, 398 P.2d 14 (1965). The relevant question presented in that case was whether a physician is responsible for injuries suffered by non-patient bus passengers because he failed to warn his patient, a bus driver, that a possible side effect of a prescribed drug was drowsiness or lassitude. In that case, the bus struck a telephone pole when the driver lost consciousness while at the wheel. The court held that the plaintiff set forth a proper cause of action and a question for the jury.

In the cited case of *Freese v. Lemmon*, 210 N.W.2d 576 (Iowa, 1973), the court held that the trial court erred when it granted the defendant physician's motion to dismiss in a case where the plaintiff, a pedestrian injured when the physician's patient lost control of his auto, alleged the defendant physician (1) negligently failed to diagnose the cause of the patient's seizure and the possibility of its recurrence, (2) negligently failed to warn the patient not to drive an automobile, and (3) negligently advised the patient that he could drive an automobile.

In the last case cited, *Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), the plaintiff sought to recover against University psychiatrists for the murder of plaintiff's daughter because the psychiatrist failed to exercise reasonable care after learning that a patient intended to kill plaintiff's daughter. The court held that the discharge of such duty may require the psychiatrist to take one or more of various steps depending on the nature of the case, including detaining his patient or warning the intended victim and police officials.

The cited cases are distinguishable from the case *sub judice* in that in the former,

the defendant physicians' failure to control the conduct of their patients resulted in harm to the non-patient plaintiffs. In the cited cases, the respective courts determined that the resulting harm was a foreseeable consequence of the physicians' failure to control the conduct of their patients.

In the case *sub judice*, the physicians were not under a duty to control the conduct of Mrs. Soto. The injuries from which both she and her husband suffered were not caused by a communicable disease. Moreover, the decedent was not injured as a result of an act performed by Mrs. Soto.

In the cases cited by the plaintiff, the respective courts extended a duty to the treating physicians for various reasons. In the cases dealing with a communicable disease, it was determined that the physician is in a position to prevent the diseases' proliferation.[3] Similarly, in those cases where the the physician possessed intimate knowledge of his patient's inability to control his conduct due to the possible side-effects of prescribed medication or the likelihood of a seizure, the courts imposed a duty on the physician to use reasonable care to protect the public. In addition to concluding that the defendant physician owed a duty to the non-patient in each of the cited cases, the courts found that the negligence of the physician was a substantial cause of the non-patient's injuries.

In the instant case, plaintiff's husband's connection vis-a-vis the defendant physicians was one step removed from that of the plaintiffs in the cited cases. Moreover, here, the defendant physicians were not under a statutory duty, nor was there a patient whose conduct needed to be controlled. Under the circumstances of this case plaintiff's husband would have suffered his injuries regardless of what treatment the physicians administered to Mrs. Soto, since she was not the actor causing her husband's injuries. For these reasons, we have concluded that the defendant physicians did not owe a duty to plaintiff's

**3.** It should be noted that most states have imposed a statutory duty on a treating physician to report cases of communicable diseases to

local health boards. In Pennsylvania, see 35 P.S. § 521.1 *et seq.*

husband, nor was the alleged negligence of the defendant physicians a substantial cause of Mr. Soto's injuries.[4]

**4.** See, *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978), for a discussion of causal connection and proximate cause.