504 A.2d 1300

Dorian M. CRADDOCK and Annie Craddock,
h/w, Appellants,

v.

Daniel J. GROSS, M.D., and United Medical Penn, Ltd., t/a
United Medical Philadelphia.

Superior Court of Pennsylvania.

Argued Sept. 11, 1985.

Filed Feb. 13, 1986.

Donald J. Martin, Norristown, for appellants.

William F. Sullivan, Jr., Philadelphia, for Gross, appellee.

Darryl J. May, Philadelphia, for United Medical, appellee.

("punishment is for the new crime only, but is heavier if he is a habitual criminal ...").

Before ROWLEY, DEL SOLE and BECK, JJ.

DEL SOLE, Judge:

This is an appeal from an Order of the Court of Common Pleas of Montgomery County granting summary judgment in favor of Appellees.

On November 27, 1981, Appellant Dorian Craddock was injured at his place of employment for which he subsequently received workmen's compensation benefits. On May 10, 1982, at the direction of employer's workman's compensation carrier, the Hartford Group, Appellant presented himself for a medical examination by Appellee, Dr. Gross, at the offices of Appellee, United Medical. Appellant's attorney was present at the examination and in the words of the trial court, "(o)utside of various instructions concerning the movement of certain limbs and other examination-related requests and replies, no discussion took place between the parties, and Dr. Gross offered no advice, diagnosis, treatment or prescriptions to Mr. Croddock." (Trial Court Opinion at 4). Appellee, Dr. Gross, submitted a report dated May 10, 1982, to the Hartford Group in which he stated, "It is my opinion that he has fully recovered from the effects of his November 21, 1981 accident." (R.R. at 139a). The Hartford Group forwarded a copy of the report to either Apellant or his attorney. Upon receipt of the report, the Hartford Group terminated the workmen's compensation claim. "Mr. Craddock apparently filed a petition of protest pursuant to the Workmen's Compensation Act, 77 P.S. § 1 et seq., but *never* gave any testimony before a workmen's compensation referee." (Trial Court Opinion at 5). Appellant returned to work in November 1982 on light duty, part-time basis after "both Mr. Craddock's treating physicians as well as his counsel agreed with the return." (Trial Court Opinion at 5). Appellants base their claim on the allegation that after a brief period of work, Appellant suffered a severe aggravation of his back injury.

The Appellant commenced the instant action in trespass against Dr. Gross and his employer United Medical alleging negligence in that the Appellees:

failed to use due care in examining the plaintiff, Dorian M. Craddock, for workmen's compensation purposes and in filing an evaluation report with the workmen's compensation carrier without noting or considering the results of certain prior medical tests allegedly performed on the plaintiff and without recognizing various symptoms allegedly suffered by Mr. Craddock at the time of the examination.

(Trial Court Opinion at 2). Appellant Annie Craddock asserted a derivative claim for lack of consortium.

Both Appellees filed motions for summary judgment alleging: no physician-patient relationship ever existed between Appellant and Appellee, Dr. Gross; the privileged nature of the evaluation report; and lack of causal connection between the examination and injury six months later.

Both motions were answered, briefed, argued and ultimately granted by the trial court. On these facts, the trial court found the absence of a duty owed to the Appellant. In the words of the trial Judge:

> On these facts, Dr. Gross's only duty to use professional skill and ability in performing the examination and issuing his report ran to the party which so engaged him, the workmen's compensation carrier. While the plaintiff may have had a right to have the actual examination itself physically conducted in such a manner as not to injur him, a question not presented on the pleadings, we determine the plaintiff had no right to expect Dr. Gross to consider certain medical data in the course of preparing his evaluation and filing his report for the carrier.

(Trial Court Opinion at 9).

Appellants filed this timely appeal. The Pennsylvania Trial Lawyer's Association has entered the case as Amicus Curiae in support of the Appellants.

Under Pennsylvania Rule of Civil Procedure 1035(b), a party is entitled to a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." "There are no disputed factual questions that are relevant to the issues on appeal." (Brief for Appellee United Medical at 3).

In reviewing summary judgment, the court must accept as true all well-pleaded facts in the non-moving party's pleadings, giving the non-moving party the benefit of all reasonable inferences to be drawn therefrom. To uphold summary judgment, there must be not only an absence of genuine factual issues, but also an entitlement to judgment as a matter of law.

*Lookenbill v. Garrett,* 340 Pa.Super. 435, 439, 490 A.2d 857, 859 (1985); *Curry v. Estate of Thompson,* 332 Pa.Super. 364, 368, 481 A.2d 658, 659 (1984) quoting *Rybas v. Wapner,* 311 Pa.Super. 50, 54, 457 A.2d 108, 109 (1983).

The question as framed by Appellant asks, "Is it error to rule as a matter of law that a physician hired by a workmen's compensation carrier is immune from liability for the reasonably foreseeable physical harm caused as a result of the negligent performance of the examination made by him?" We recently reiterated that the basic elements of a cause of action founded upon negligence are:

1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2. A failure on his part to conform to the standard required.

3. A reasonably close causal connection between the conduct and the resulting injury

$$. \quad . \quad . \quad . \quad .$$

4. Actual loss or damage resulting to the interests of another.

Prosser, Law of Torts, § 30 at 143 (4th ed. 1971). *Casey v. Geiger,* 346 Pa.Super. 279, 289–290, 499 A.2d 606, 612 (1985); *Macina v. McAdams,* 280 Pa.Super. 115, 120, 421 A.2d 432 (1980). "(D)uty is a question of whether a defendant is under any obligation for the benefit of the particular plaintiffs, and in negligence cases, the duty is always the

same, to conform to the legal standard of reasonable conduct in the light of apparent risk." *Casey v. Geiger,* 346 Pa.Super. at 290, 499 A.2d at 612. As previously indicated, the trial court found that the physicians "only duty to use professional skill and ability in performing the examination and issuing his report ran to the party which so engaged him, the workmen's compensation carrier." (Trial Court Opinion at 9).

No Pennsylvania cases have been found dealing with a physician's duties and liabilities to a person examined pursuant to the physician's contract with that person's workmen's compensation insurer.

However, this precise question has been addressed by appellate courts from other jurisdictions and we find these decisions of assistance in the present case.

In *Rogers v. Horvath,* 65 Mich.App. 644, 646, 237 N.W.2d 595, 597 (1975) it was stated:

> The term 'malpractice' denotes a breach of the duty owed by one in rendering professional services to a person who has contracted for such services; in physician-malpractice cases, the duty owed by the physician arises from the physician-patient relationship. No such relationship existed in the case at bar. Defendant was employed by General Motors to examine one of its employees in preparation for a workmen's compensation hearing. Plaintiff did not employ the defendant, nor did she seek or receive medical advice or treatment. Under such circumstances, the defendant did not owe plaintiff any duty arising from a physician-patient relationship.

*Id.*

Similarly, it was found in *Keene v. Wiggins,* 69 Cal. App.3d 308, 315–316, 138 Cal.Rptr. 3, 8 (1977).

> Here we find no physician-patient relationship, express or implied, of the sort giving rise to a duty of care owed to Keene in connection with the report. The uncontradicted declarations assert Keene went to Wiggins' office at the request of the carrier for "examination." Keene was present because he was required to submit to examina-

tion as a claimant. There is no assertion Wiggins did anything more than examine Keene and make his report to Industrial Indemnity as he was hired to do. The carrier requested this examination to verify the opinions of the other consulting doctors who had stated no operation or treatment was called for and to rate the disability. The Wiggins opinion was needed to properly rate the case for settlement of Keene's claim (see Lab.Code, § 4600); as such the opinion was solely for the carrier's benefit in the adversary Worker's Compensation proceedings. None of the declarations suggest Wiggins' examination was part of Keene's care or treatment; nor do they suggest Wiggins voluntarily offered Keene any advice and counsel or otherwise intended to benefit Keene personally.

*Id.*

In the recent case of *Cook v. Optimum/Ideal Managers, Inc.,* 130 Ill.App.3d 180, 84 Ill.Dec. 933, 939, 473 N.E.2d 334, 340 (1984) the court, while considering the admittedly distinct question of the failure of a physician retained by an insurance company to furnish employees with reports of medical exams conducted for purposes of workmen's compensation claims, opined:

> While a patient certainly reposes confidence in his treating physician, the same cannot be said of an employee and a physician retained by the employer, not to treat the employee, but to examine him with reference to a pending worker's compensation claim. Moreover, when the employee has other physicians treating his injury as in the instant case, it is difficult to see how the ... 'physician' would have domination and influence over him.

*Id.*

The cases from these jurisdictions appear uniform in holding under practically the same facts, that no cause of action for medical malpractice exists.

Appellant seeks to establish a duty in the matter sub judice by reliance on Section 323 of the Restatement (Second) of Torts which provides:

Negligent Performance of Undertaking to Render Services—One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Appellant's reliance on § 323 is misplaced. In this case, as the trial court stated, "On the facts presented, it is clear Dr. Gross never undertook to render services to Mr. Craddock, since he was employed by the carrier to file an evaluation and report directly to it, and never offered any advice or treatment to Mr. Craddock." (Trial Court Opinion at 11–12).

Accordingly, we find the above cited cases persuasive authority for holding that in the absence of a duty owed to the Appellant in this instance, the Appellee's are entitled to judgment as a matter of law. Therefore, we affirm the Order of the Trial Court.