559 A.2d 530

**Joseph R. DiMARCO, Appellant,**

**v.**

**LYNCH HOMES-CHESTER COUNTY, INC., Lynch Homes, Inc., Leonard C. Guinta, D.O., Lawrence K. Alwine, D.O. and Chester County Medical Associates, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 10, 1989.

Filed April 14, 1989.

Reargument Denied June 20, 1989.

Edward T. Feierstein, Philadelphia, for appellant.

Kean K. McDonald, Philadelphia, for Lynch Homes, appellee.

James M. Penny, Jr., Philadelphia, for Guinta, appellees.

Before WIEAND, MONTEMURO and HOFFMAN, JJ.

MONTEMURO, Judge:

■ Appellant, Joseph R. DiMarco, appeals from an order of the Court of Common Pleas of Philadelphia County, wherein the court dismissed his complaint following the filing of preliminary objections by appellees, Leonard C. Guinta, D.O., Lawrence K. Alwine, D.O., and Chester County Medical Associates. "A preliminary objection in the nature of a demurrer is not to be sustained and the complaint dismissed unless the law says with certainty that no recovery is possible.... Therefore, if any theory of law will support the claim raised by the petition, a dismissal is improper." *Cianfrani v. Commonwealth State Employees' Retirement Board*, 505 Pa. 294, 479 A.2d 468 (1984). Additionally, when reviewing a trial court's order sustaining preliminary objections in the nature of a demurrer, we must accept as true all material facts alleged in the complaint, as well as inferences reasonably deductible therefrom. *Gentile v. West American Insurance Exchange*, 367 Pa.Super. 99, 104–105, 532 A.2d 472, 475 (1987). We have carefully reviewed appellant's complaint and we find that it does present a viable claim, assuming that the facts as alleged in the complaint can be proven by appellant. Therefore, we reverse.

■ The issue which we confront in this case is one of first impression. A review of the complaint presents the following underlying facts. On June 18, 1985, Janet Viscichini, a phlebotomist, visited the Lynch Home in Kimberton, Pennsylvania, in order to draw a blood sample from one of the Lynch Home residents. The patient apparently became agitated during the procedure and struck or kicked Ms. Viscichini. As a result, Ms. Viscichini's skin was accidentally punctured with the needle that had been used to draw the patient's blood sample. After being advised that the patient seen by Ms. Viscichini was a carrier of diseases, including hepatitis, Ms. Viscichini visited appellees, Guinta and Alwine, (hereinafter "physicians") on June 18, 1985, for consultation and treatment. She was advised by her physicians that if she did not contract hepatitis within six weeks

of June 18, 1985, she would not contract the disease. She was also advised by her physicians to refrain from sexual relations during this six week period.

Ms. Viscichini did not experience any physical symptoms of hepatitis and, eight weeks after the Lynch Home incident, Ms. Viscichini resumed sexual relations with the appellant. As the trial court noted in its opinion of July 15, 1988, Ms. Viscichini was separated from her husband and although she and the appellant did not reside together, they had been sexual partners before the July 15, 1985, incident. Further, the physicians who treated Ms. Viscichini knew both Ms. Viscichini and appellant personally and "were aware or had reason to know that [appellant] and Ms. Viscichini were intimate." Op. of Trial Court at 2; N.T., May 19, 1988, at 34.

Ms. Viscichini was diagnosed with Hepatitis B in September of 1985 and the appellant was subsequently diagnosed with this disease in December of 1985. Appellant instituted suit against Ms. Viscichini's physicians, as well as the Lynch Home. Appellant claimed, *inter alia,* that the physicians had been negligent in failing to advise Ms. Viscichini that having sexual relations within six *months* of June 18, 1985, could cause her sexual partner to contract hepatitis. Although recognizing that in some cases physicians have been held liable in negligence to non-patients, the trial court stated:

> ... a physician has no control over the sexual conduct of his patients nor is he normally [apprised] of the extent to which sexual conduct is engaged in, or with whom, by his patients. Such is in line with acceptable boundaries of privacy recognized today. A physician's duty should not extend into circumstances that might infringe on these boundaries.
>
> Certainly, a duty may be owed to a husband in such circumstances in the medical care of his wife, whether they live together or not. The duty owed to a husband can be based on the financial obligations and responsibility of the husband to pay for necessary physician services

rendered to the wife. Such liability may be primary or secondary. A non-husband has no such legal responsibility.

To adopt Plaintiff's view could extend a duty by physicians to a one time infrequent or casual sexual interaction. Such a view has no soundness in public policy.

To the contrary, the public policy of this Commonwealth remains, as before, in support of marriage and the family. The distinctions noted here are consistent with that policy.

Op. of Trial Court at 4. We agree that the public policy which supports and values the family unit in our society is vitally important. It is a public policy which our courts should recognize and consider in reaching decisions in many types of cases. However, under the particular circumstances of the instant case, we find that this public policy does not outweigh other considerations to demand the result reached by the trial court.

Our courts have recognized the general rule of law that "[t]he term 'malpractice' denotes a breach of the duty owed by one in rendering professional services to a person who has contracted for such services; in physician-malpractice cases, the duty owed by the physician arises from the physician-patient relationship." *Craddock v. Gross*, 350 Pa.Super. 575, 579, 504 A.2d 1300, 1302 (1986) (quoting *Rogers v. Horvath*, 65 Mich.App. 644, 646, 237 N.W.2d 595, 597 (1975)). In *Craddock*, the appellant Dorian Craddock, at the request of his employer's workmen's compensation carrier, was examined following a work-related back injury. Dr. Gross, who was under contract with the employer's workmen's compensation carrier, performed the physical examination on behalf of the carrier and did not offer advice, diagnosis, treatment or prescriptions to Mr. Craddock. Dr. Gross informed the insurance carrier that Mr. Craddock had fully recovered. After he returned to work, appellant Craddock suffered a severe aggravation of his back injury. He instituted suit against Dr. Gross, alleging that the doctor had breached his duty of reasonable care in

failing to properly evaluate Craddock's physical condition. This Court in *Craddock* determined that Dr. Gross owed no duty arising from a physician-patient relationship to Craddock. We cited the following language from *Cook v. Optimum/Ideal Managers, Inc.*, 130 Ill.App.3d 180, 84 Ill.Dec. 933, 939, 473 N.E.2d 334, 340 (1984):

> While a patient certainly reposes confidence in his treating physician, the same cannot be said of an employee and a physician retained by the employee, not to treat the employee, but to examine him with reference to a pending worker's compensation claim. Moreover, when the employee has other physicians treating his injury as in the instant case, it is difficult to see how the ... 'physician' would have domination and influence over him.

Recently, in *Ervin v. American Guardian Life Assurance Company*, 376 Pa.Super. 132, 545 A.2d 354 (1988), we relied upon our holding in *Craddock*. In that case, Thomas J. Ervin applied for life insurance and, at the request of the insurance carrier, an EKG was taken. The carrier's medical director, Dr. Knee, examined the EKG which disclosed cardiac abnormalities which Dr. Knee failed to discover or, in the alternative, to disclose to Ervin. Less than a month after the EKG, Ervin suffered a heart attack and died. The *Ervin* Court stated:

> ... [T]he defendant physician in the instant case owed no duty to the plaintiff's decedent either to discover his heart problem, or, having discovered it, to inform the decedent thereof. The defendant had been employed by American to advise the company whether the applicant was an insurable risk. He was not employed to make a diagnosis for the applicant or to treat the applicant for any condition which was discovered. Neither was there any evidence that the defendant, by giving the applicant advice or otherwise, had assumed a physician-patient relationship.

*Id.*, 376 Pa.Superior Ct. at 139, 545 A.2d at 358. The appellant in *Ervin* attempted to rely upon Section 324A of

the Restatement (Second) of Torts to create a duty on the part of the insurance carrier's physician:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for the physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other person to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A. We found Section 324A inapplicable because, in *Ervin*, the physician had not read the EKG to benefit or to treat anyone but merely to advise the insurance company. Further, there was no reliance by Ervin on any medical advice offered to him by the carrier's physician.

In the case at bar, we find that the appellant has stated a cause of action, pursuant to Section 324A, even though there was no physician-patient relationship between the appellant and Janet Viscichini's physicians. In *Cantwell v. Allegheny County*, 506 Pa. 35, 483 A.2d 1350 (1984), our Supreme Court recognized that the essential provisions of Section 324A "have been the law of Pennsylvania for many years." *Id.*, 506 Pa. at 40, 483 A.2d at 1353. The present case is distinguishable from *Ervin* and *Craddock, supra*, which also lacked a physician-patient relationship between the plaintiff and the defendant, for a number of significant reasons. First, a physician-patient relationship did exist in the present case between Janet Viscichini and her physicians. Ms. Viscichini visited her physicians for the purpose of receiving professional treatment and medical advice when she knew that she may have been exposed to hepati-

tis. Second, this case involves a communicable disease.[1] It hardly needs to be said that the prevention and control of communicable diseases is a momentous task which is of the utmost importance to the health and welfare of our citizens. The Disease Prevention and Control Law of 1955 requires a physician who treats or examines a person suffering from or who is suspected of having a communicable disease to make a prompt report to the local board of health or, if necessary, to the State Health Center of the Department. *See* 35 P.S. § 521.3; 28 Pa.Code § 27.21(a) and (b). We note that 28 Pa.Code § 27.115 specifically requires physicians to report cases of Hepatitis B. Further, several provisions of the Pennsylvania Code set forth procedures to be followed to prevent the contamination of our blood banks with blood from donors who suffer from or may have been exposed to viral hepatitis. *See* 28 Pa.Code §§ 27.51 and 30.30(7)(i).

Although there is a dearth of case law addressing medical malpractice in relation to communicable disease, several other jurisdictions have considered cases similar to the case at bar. Although none of these cases rely on Section 324A of the Restatement (Second) of Torts, we find their reasoning and underlying public policy considerations persuasive. In *Wojcik v. Aluminum Company of America*, 18 Misc.2d 740, 183 N.Y.S.2d 351 (1959), the plaintiff, Joseph Wojcik, had been examined by a physician who was apparently an agent of Mr. Wojcik's employer. It was the practice of the employer to inform the employee of any physical problems discovered during the course of the physical examination. In Wojcik's case, it was alleged that his employer was negligent in failing to advise Wojcik that X-ray results indicated that he had tuberculosis. Joseph Wojcik's wife, Caroline Wojcik, was also a plaintiff in the suit, claimed that due to the negligence which had occurred, she failed to take

---

**1.** A communicable disease is defined as "[a]n illness due to an infectious agent or its toxic products which is transmitted, directly or indirectly, to a well person from an infected person, animal or anthropoid, or through the agency of an intermediate host, vector of the inanimate environment." 35 P.S. § 521.2(c). Other obvious examples of communicable diseases include AIDS (Acquired Immune Deficiency Syndrome), Syphilis, Tuberculosis.

immediate and proper steps to avoid contracting tuberculosis from her husband. The *Wojcik* Court held that Caroline Wojcik had stated a cause of action and, accordingly, motions to dismiss were denied. The Court opined:

... the defendant could have reasonably anticipated that the plaintiff-husband, without knowledge of his contagious disease, would not take precautionary measures necessary to prevent infecting others, including his wife, with the germs of the disease.

In 41 Am.Jur., Physicians and Surgeons, § 101, p. 216, it is stated: "One who by reason of his professional relations is placed in a position where it becomes his duty to exercise ordinary care to protect others from injury or danger is liable in damages to those injured by reason of his failure to do so." The policy of the law in general is stated in 70 C.J.S. Physicians and Surgeons § 48, p. 970, as follows:

"It is the duty of a physician who is attending a patient afflicted with a contagious or infectious disease to exercise care in advising and warning members of the family and others who are liable to exposure of the existence and nature of the danger from the disease, to avoid doing any act which would tend to spread the infection, and to take all necessary precautionary measures to prevent its spread to other patients attended. A physician who fails to give such warning is negligent, and is liable in damages to any person injured as the direct and proximate result of his negligence."

The plaintiff, Caroline Wojcik, the wife of the plaintiff Joseph Wojcik whom the doctors, as agents of the defendant, discovered was infected with tuberculosis, a contagious disease, is clearly within the ambit of the duty and the liability of these agents....

*Id.* at 746–747, 183 N.Y.S.2d at 358–359.

*Wojcik v. Aluminum Company of America, supra,* was subsequently relied upon by the Court in *Hofmann v. Blackmon,* 241 So.2d 752 (Fla. 4th DCA 1970), cert. denied, 245 So.2d 257 (Fla.1971), wherein a minor child had contract-

ed tuberculosis from her father after the father's physician failed to diagnose that he had the disease. The *Hofmann* Court held the following:

> We hold that a physician owes a duty to a minor child who is a member of the immediate family and living with a patient suffering from a contagious disease to inform those charged with the minor's well being of the nature of the contagious disease and the precautionary steps to be taken to prevent the child from contracting such disease and that the duty is not negated by the physician negligently failing to become aware of the presence of such a contagious disease.

*Id.* at 753. More recently, in *Shepard v. Redford Community Hospital*, 151 Mich.App. 242, 390 N.W.2d 239 (1986), the Court of Appeals of Michigan held that the absence of a physician-patient relationship between a hospital and a deceased child did not preclude a finding of a duty on the part of the hospital. In that case, the child's mother went to the defendant hospital because she was suffering from high fever, leg pain, congestion, headaches and weakness. The doctor who examined her failed to determine that she had spinal meningitis. After she had returned to her home, her son contracted the disease and later died as a result. The Court stated that "[g]enerally, a party has no duty to protect another who is endangered by a third person absent a special relationship with either the dangerous person or the potential victim." *Id.* at 245, 390 N.W.2d at 241 (citations omitted). The Court found that the defendant hospital had a special relationship with its patient, the mother. "This was a special relationship with the one who allegedly infected [the child], leading to his death. Accordingly, a duty of reasonable care may arise." *Id.*[2]

---

**2.** We also take note of *Soto v. Frankford Hospital,* 478 F.Supp. 1134 (E.D.Pa.1979). There, the plaintiff, administratrix of her husband's estate, claimed that physicians who had treated her had been negligent in failing to diagnose her condition as carbon monoxide poisoning. As a result, she was not alerted to the fact that her gas heater was defective and that this failure to warn was the proximate cause of her husband's death from carbon monoxide poisoning. The court refused to hold the physicians liable to the deceased husband, a

Finally, the facts as alleged by the appellant in the instant case, fit squarely within Section 324A, subsection (c), of the Restatement of Torts 2d (1977). Janet Viscichini's physicians, knowing that their patient had been exposed to a communicable disease, advised her concerning precautions she was required to take in order not to spread hepatitis to a healthy person. The physicians certainly recognized that this information was necessary for the protection of third parties. It is alleged that Ms. Viscichini's physicians were negligent because the information they provided to Janet Viscichini was erroneous. Assuming that appellant is able to establish this fact, then Ms. Viscichini's physicians may be subject to liability pursuant to Section 324A, subsection (c), if appellant can also establish, as he states in his appellate brief, that he suffered harm because of his reliance on the advice that Janet Viscichini had received from her physicians. Appellant states that "[t]he appellee physicians are alleged to have negligently and/or recklessly dispensed medical advice, which impacted on Janet Viscichini's decision to have sexual relations with appellant, as well as appellant's decision to have such intimate relations with her." Brief for Appellant at 8–9; N.T., May 19, 1988, at 39. Since appellant has claimed that he was aware of the medical advice given by Ms. Viscichini's physicians, provided in the context of a physician-patient relationship, and that he relied on that advice in consenting to sexual relations with Ms. Viscichini, we find that appellant has set forth cause of action in negligence. We therefore

non-patient, and in so doing, the court distinguished cases involving communicable diseases:

> In the case *sub judice,* the physicians were not under a duty to control the conduct of Mrs. Soto. The injuries from which both she and her husband suffered were not caused by communicable disease. Moreover, the decedent was not injured as a result of an act performed by Mrs. Soto.
>
> In the cases cited by the plaintiff, the respective courts extended a duty to the treating physicians for various reasons. In the cases dealing with a communicable disease, it was determined that the physician is in a position to prevent the diseases' proliferation....

*Id.* at 1136 (footnote omitted).

reverse the order of the trial court, dismissing appellant's complaint, and we remand for further proceedings consistent with this Opinion.[3]

■ Reversed and Remanded.[4] Jurisdiction is relinquished.

**3.** Our decision is limited to the facts of the case presently before us. Our Supreme Court stated the following principle in *Kaczkowski v. Bolubasz*, 491 Pa. 561, 579 n. 21, 421 A.2d 1027, 1036 n. 21 (1980): "We refrain 'from attempting to fashion broad general rules as a panacea. The obviously wiser choice is to resolve disputes on a case-by-case basis until we develop, through experiences in [an] area, a sound basis for developing overall principles.'" We do not hold that Viscichini's physicians had a duty to control her conduct, but only that they had a duty to act reasonably in advising her regarding her ability to transmit her communicable disease. This case is one which involves medical advice, given in the context of a physician-patient relationship, concerning precautions to prevent the spread of a communicable disease by the patient. Importantly, in the case at bar, the third party to the physician-patient relationship claims to have been aware of the medical advice concerning the transmittal of the disease, and to have relied and acted upon this medical advice in interacting with the patient. We need not consider at this time whether a duty on the part of a physician will be recognized if a third party contracts a communicable disease from a patient who is acting on incorrect medical advice, where the third party was never advised of the medical advice by the patient. In the case presently before us, we have reliance by the third party on the defendant physicians' medical advice. Under these circumstances, we are willing to find that the physicians owed a duty of reasonable care to the non-patient. *See Gerace v. Holmes Protection of Philadelphia*, 357 Pa.Super. 467, 516 A.2d 354 (1986) (installer and maintainer of burglar alarm system in jewelry store owed no duty of care to ring owners who had left rings at the store prior to the burglary, as ring owners could not have relied on placement of the burglar alarm system because they had no knowledge of the existence of the system).

**4.** The trial court also dismissed the complaint against the appellees Lynch Homes—Chester County, Inc. This was erroneous because Lynch Homes did not file any preliminary objections. *See Galdo v.*

*First Pennsylvania Bank N.A.*, 250 Pa.Super. 385, 378 A.2d 990 (1977). Thus, the complaint as a whole should not have been dismissed.