MARIE "DIANE" HEIGERT, Plaintiff-Appellee, v. DAVID R. RIEDEL *et al.*, Defendants-Appellants.

Fifth District  No. 5—89—0055

Opinion filed November 27, 1990.—Rehearing denied January 15, 1991.

GOLDENHERSH, J., dissenting.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Richard P. Roessler and James E. DeFranco, of counsel), for appellant.

R. Dan Winnett, of Runge & Gumbel, P.C., of Collinsville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Marie "Diane" Heigert, brought a negligence action in the circuit court of Madison County to recover damages for personal injuries she sustained as the result of medical malpractice allegedly committed by defendants, David R. Riedel and Chester Hill, each of whom is a licensed physician. Defendants moved to dismiss plaintiff's complaint under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) on the grounds that it failed to state a cause of action. Following a hearing, defendants' motion was denied. We then granted this permissive interlocutory appeal pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308). For the reasons which follow, we now reverse and remand.

Because this appeal is before us on defendants' motion to dismiss, all well-pleaded facts in plaintiff's complaint and all reasonable inferences which can be drawn from those facts will be regarded as true. (*Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 499, 520 N.E.2d 37, 38.) We note, parenthetically, that plaintiff's complaint also has appended to it the affidavit by counsel and the written doctor's report required by section 2—622 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—622) in medical malpractice actions. As a general rule, exhibits which are attached to a complaint are considered to be part of the complaint (*Friedman v. Gingiss* (1989), 182 Ill. App. 3d 293, 295, 537 N.E.2d 1067, 1069), and a motion to dismiss admits as true the facts contained in such exhibits just as it admits well-pleaded facts in the body of the complaint itself. (*Bond v. Dunmire* (1984), 129 Ill. App. 3d 796, 804, 473 N.E.2d 78, 84.) Although the courts have yet to decide whether the materials required by section 2—622 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—622) are sufficiently analogous to "exhibits" in the conventional sense to fall within this rule, resolution of the question is not necessary to the disposition of this appeal.

While defendants challenged the sufficiency of the affidavit of counsel and the written doctor's report at the trial court level, that challenge has not been pursued on appeal. In the proceedings before this court, defendants themselves have cited factual matters contained in the written doctor's report in support of their argument that plaintiff's complaint fails to state a cause of action. For the purposes of this appeal, we shall therefore regard those factual matters as being properly before us and, as with the well-pleaded facts in plaintiff's complaint, they, too, shall be accepted as true.

According to plaintiff's complaint and the attachments thereto,

defendants were licensed physicians who practiced medicine in Alton, Illinois. On March 10, 1983, an individual named Howard Lee Christopher was admitted to St. Anthony's Hospital in Alton, and defendants treated him. At the time of his admission, Christopher was diagnosed by defendants as suffering from "Fournier's gangrene." Routine admission tests and X rays revealed, however, that Christopher had a pathological condition in his lung and that his sputum contained "acid fast bacillae."

Plaintiff alleges that these test results suggest a diagnosis of tuberculosis, and that a reasonably competent physician would have been put on notice by the findings that additional diagnostic tests should have been performed to ascertain whether the patient was actually suffering from that disease. According to plaintiff, however, these additional diagnostic tests were either not performed by defendants or else were not performed in a timely fashion. Plaintiff asserts that if defendants had pursued the diagnosis of Christopher properly, they would have discovered that he was, in fact, afflicted with tuberculosis and that the tuberculosis was in a contagious stage.

According to plaintiff, accepted standards of medical care require that certain precautions be taken in order to prevent tuberculosis patients from spreading their illness to other members of the hospital population, including having the patient isolated. Because defendants failed to realize that Christopher suffered from tuberculosis, however, such precautions were not taken here. Plaintiff, who was employed at St. Anthony's Hospital as a nurse, claims that she then came into contact with Christopher in the course of her duties and contracted the disease from him.

In her complaint, plaintiff seeks to impose liability on defendants for the resultant damages she sustained on the grounds that they acted negligently in one or more of the following respects: (a) failing to perform the necessary diagnostic tests which would have disclosed that Christopher was suffering from contagious tuberculosis "and/or" failing to perform those tests in a timely fashion; (b) failing to isolate Christopher; and (c) failing to warn her of the dangers of coming into contact with Christopher.

■ ■ As we indicated at the outset of this opinion, this matter is now before us following the circuit court's denial of defendants' motion to dismiss plaintiff's complaint for failure to state a cause of action. It is axiomatic that in order to survive a motion to dismiss, a complaint must state a cause of action that is legally, as well as factually, sufficient. A legally sufficient complaint is one which sets forth a legally recognized claim upon which the plaintiff is entitled to recover

damages. (*Northrop Corp. v. Crouch-Walker, Inc.* (1988), 175 Ill. App. 3d 203, 205-06, 529 N.E.2d 784, 785.) A complaint for negligence, to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387, 395-96, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077.) On this appeal, defendants' sole claim is that the circuit court erred in denying their motion to dismiss because the first of these elements, the existence of a duty, is absent.

■■ ■ The determination of whether a duty exists, *i.e.*, whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff, is an issue of law to be determined by the court. (117 Ill. 2d at 525, 513 N.E.2d at 396.) A key concern in determining whether a duty exists is the reasonable foreseeability of injury. This, however, is not the only consideration. The question of duty in a negligence action should also take into account the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon the defendant. (117 Ill. 2d at 526, 513 N.E.2d at 396.) In this regard, our supreme court has recently reiterated that a court's determination of duty reflects the policy and social requirements of the time and community. In its view, " ' "duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.' [Citation.]" 117 Ill. 2d at 526-27, 513 N.E.2d at 396.

Surprisingly, there is a dearth of case law regarding the duty of a physician in the context of medical malpractice actions involving communicable diseases such as tuberculosis. One standard reference work, however, has stated:

"[I]t is the general rule that a physician is liable for his negligence in permitting persons to be exposed to infectious or communicable diseases to the injury of the persons so exposed. Thus, a physician in attendance upon a case of typhoid fever must notify attendants of the nature and character of the disease, warn them of the danger of infection, and instruct them as to the usual methods approved by the profession, of which he has knowledge, for preventing the spread of the disease. He must also exercise reasonable care to advise members of the patient's family, and others who are liable to be exposed thereby, of the nature of the disease and the danger of expo-

sure." 61 Am. Jur. 2d *Physicians, Surgeons & Other Healers* §245, at 377 (1981).

This view has been adopted by the courts of at least two other jurisdictions. In *Hofmann v. Blackmon* (Fla. App. 1970), 241 So.2d 752, the District Court of Appeal of Florida, Fourth District, held (1) that a physician owes a duty to a minor child who is a member of the immediate family of and living with a patient suffering from tuberculosis to inform those charged with the minor's well-being of the nature of the contagious disease and the precautionary steps to be taken to prevent the child from contracting such disease and (2) that this duty is not negated by the fact that the physician may have negligently failed to become aware that his patient was suffering from tuberculosis. Under this holding, if the physician negligently failed to diagnose tuberculosis in the patient and the patient's child then contracted the disease from the patient, the physician would have breached a duty he owed to the child and would be liable for the child's injuries.

Similarly, in *DiMarco v. Lynch Homes-Chester County, Inc.* (1989), 384 Pa. Super. 463, 559 A.2d 530, *appeal granted* (1989), 524 Pa. 597, 568 A.2d 1247), the Superior Court of Pennsylvania held that a patient's husband stated a cause of action against her physicians where (1) those physicians had been negligent in failing to advise the patient that having sexual relations within six months of her exposure to hepatitis could cause her sexual partner to contract the disease and erroneously advised her, instead, simply to refrain from sexual relations for a six-week period following her exposure, (2) the physicians who treated the patient were aware or had reason to know that the patient and her husband were sexually intimate, (3) the physicians recognized that advising the patient concerning precautions she was required to take in order to avoid spreading the disease to a healthy person was necessary for the protection of third parties, (4) the patient's husband relied on the erroneous advice the patient had received when he consented to having sexual relations with her, and (5) as a result of those sexual relations, the husband contracted hepatitis himself.

In reaching this result, the court relied upon section 324A of the Restatement (Second) of Torts (1965), which states:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other person to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts §324A, at 142 (1965).

Section 324A of the Restatement (Second) of Torts has been adopted by the supreme court of Illinois. (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 390, 493 N.E.2d 1022, 1027.) Under section 324A and the other authorities we have just cited, we can understand why the circuit court here concluded that plaintiff's complaint stated a valid cause of action.

Although the plaintiff in this case is a health care provider and not a family member as in the Florida and Pennsylvania cases, we can see no justification for affording her less protection. Nurses such as plaintiff who work in a hospital setting may, of necessity, have extensive physical contact of the most personal nature with the patients in their charge. Accordingly, the risk they run of contracting a contagious illness from a patient can certainly rival the risk experienced by the members of the patient's household.

To be sure, our supreme court has noted that the legislature of this State has expressed a policy preference in favor of reducing damages generally against the medical profession so as to reduce the burden existing in the health profession as a result of the perceived medical malpractice crisis. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 527, 513 N.E.2d 387, 397, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077.) At the same time, however, we agree with the court in *DiMarco v. Lynch Homes-Chester County, Inc.* (1989), 384 Pa. Super. 463, 559 A.2d 530, *appeal granted* (1989), 524 Pa. 597, 568 A.2d 1247), that the prevention and control of communicable diseases is a momentous task which is of the utmost importance to the health and welfare of our citizens.

The work of nurses such as plaintiff is critical to this task. If they are not given recourse in cases such as this for the damages they sustain on the job as the result of the negligence of their colleagues in the medical profession, their ranks, already critically depleted in some locales, could be diminished even further. In an era when concern over another communicable disease, AIDS, is so pervasive, the result, paradoxically, could be a crisis in public health which dwarfs any concern over the cost of physician malpractice.

■ Having said all of this, we must nevertheless conclude that

the circuit court erred in denying defendants' motion to dismiss. Although we have found no Illinois authority dealing with the precise situation here, our supreme court has recently articulated what appears to be a "bright line" test regarding the scope of a physician's duty in medical malpractice actions. In *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 531, 513 N.E.2d 387, 399, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077, the court held:

> "We consider that the preferable view, and the one consistent with this court's holdings and with legislation based on social and public policy, is that a plaintiff cannot maintain a medical malpractice action absent a direct physician-patient relationship between the doctor and plaintiff or a special relationship, as present in *Renslow [v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250], between the patient and the plaintiff."

Plaintiff here, of course, had no direct physician-patient relationship with either of the defendants, nor can she claim to have had the "special relationship" with defendants' patient as was present in *Renslow*.

In *Renslow*, a child not conceived at the time negligent acts were committed against her mother by a doctor and a hospital's employees was allowed to bring an action against the hospital and physician for the injuries she sustained as a result of the negligence which had been directed against her mother. If *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077, is read in isolation, one might think that the particular situation present in *Renslow* was merely illustrative of the type of "special relationship" which would give rise to a duty by a physician which extended to third-party nonpatients, and that other types of special relationships might exist which would give rise to a similar duty. The year after *Kirk* was decided, however, our supreme court issued its opinion in *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 520 N.E.2d 37. In that case Justice Ward, the author of *Kirk v. Michael Reese Hospital & Medical Center*, explained that the court in *Kirk* had understood that

> "the duty in *Renslow* was based primarily on the injury's being a direct result of alleged negligence to the infant's mother, *and was limited to a certain type of special relationship*: the former patient was the mother of the injured party." (Emphasis added.) (119 Ill. 2d at 509, 520 N.E.2d at 42.)

In view of this language, it would appear that our supreme court re-

gards the circumstances in *Renslow* as *sui generis*. Until that court holds otherwise, we therefore do not believe that we can recognize any other situations in which a physician will be regarded as owing a duty in a malpractice action to a third party who is not his patient.

The dissent's attempt to find a loophole in *Kirk* through section 319 of the Restatement (Second) of Torts (1965) is completely misguided. Contrary to the dissent's representation, the court in *Kirk* did consider section 319 and found that it did not apply. (*Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d at 530, 513 N.E.2d at 398.) The dissent's reliance on *Johnson v. Village of Libertyville* (1986), 146 Ill. App. 3d 834, 496 N.E.2d 1219, is even more misplaced. That decision was reversed by the supreme court in all respects relevant to this dispute in *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 520 N.E.2d 37, which we have cited above. In *Condell*, as in *Kirk*, the supreme court held that section 319 did not apply, and it specifically noted that

> "[i]n cases where it was held there was a duty imposed on medical or penal institutions to protect third parties from harm, the institutions had custody of the dangerous persons through a court order or adjudication that gave them actual control over the individuals." (119 Ill. 2d at 508, 520 N.E.2d at 42.)

These circumstances are clearly not present here.

For the foregoing reasons, the order of the circuit court of Madison County denying defendants' motion to dismiss is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

WELCH, J., concurs.

JUSTICE GOLDENHERSH, dissenting:

I respectfully dissent.

In its opinion, the majority too narrowly construes the *Kirk* and *Condell* cases and precludes the imposition of a duty in a situation in which the trial court correctly determined a cause of action exists.

The majority construes *Kirk* as establishing a bright line test and, based on *Renslow*, restricting the scope of a special relationship solely to that of physician-patient. In my opinion, reading *Renslow*, *Kirk* and *Condell* together, the supreme court was limit-

ing the imposition of duty to those situations in which a relationship distinguishable from that of a mere member of the general public was present. In *Renslow*, the special relationship of physician-patient to the plaintiff was outside the scope of the general public member, whereas in this situation the plaintiff is in a special relationship of a professional caregiver, a fellow health care professional who works in concert with and often at the direction of a physician. This relationship is also distinguishable from that of the general public.

In this situation also there is applicable authority which the court in *Kirk* specifically noted that it was not construing. (*Kirk*, 117 Ill. 2d at 530, 513 N.E.2d at 398.) The court in *Kirk* (117 Ill. 2d at 530-31, 513 N.E.2d at 398) specifically noted that its decision did not deal with those situations covered in sections 315 to 319 of the Restatement (Second) of Torts (1965) in which a duty to third parties is delineated in various rules. The case at hand would reasonably come under the category of those instances contemplated under section 319 of the Restatement (Second) of Torts (1965) and follows the situation contemplated by that section in illustration 1.

"§319. Duty of Those in Charge of Person Having Dangerous Propensities

One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

Comment:

a. The rule stated in this Section applies to two situations. The first situation is one in which the actor has charge of one or more of a class of persons to whom the tendency to act injuriously is normal. The second situation is one in which the actor has charge of a third person who does not belong to such a class but who has a peculiar tendency so to act of which the actor from personal experience or otherwise knows or should know." (Restatement (Second) of Torts §319, Comment, at 129 (1965).)

"Illustrations:

1. A operates a private hospital for contagious diseases. Through the negligence of the medical staff, B, who is suffering from scarlet fever, is permitted to leave the hospital with the assurance that he is entirely recovered, although his disease is still in an infectious stage. Through the negligence of a guard employed by A, C, a delirious smallpox

patient, is permitted to escape. B and C communicate the scarlet fever and smallpox to D and E respectively. A is subject to liability to D and E ***." (Restatement (Second) of Torts §319, at 130 (1965).)

Actually, this is a stronger situation than illustration 1 in which apparently a member of the general public contracts this contagious disease. In the instant case the person who has a special relationship to the contagious individual contracts the contagious disease. If a member of the general public would be of the class to whom a duty would be owed in the circumstances delineated in illustration 1, a member of the particular class in a special relationship such as this plaintiff would surely be one to whom a similar duty is owed. This would also satisfy the special relationship requirements of *Renslow, Kirk* and *Condell* noted above.

Viewing other aspects of *Kirk*, imposition of liability would also conform to the analysis of the entire question of duty. In *Kirk*, as stated by the majority, a court must consider various factors such as reasonable foreseeability, likelihood of injury, the magnitude of the burden of guarding against the particular harm and the consequences of placing that burden on a defendant.

An example of application of the *Kirk* method of analysis is found in *Johnson v. Village of Libertyville* (1986), 146 Ill. App. 3d 834, 496 N.E.2d 1219, *aff'd in part & rev'd in part on other grounds sub nom. Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 520 N.E.2d 37. The explicit premise of the appellate court's imposition of duty, and the grounds on which our supreme court reversed, was that the defendant mental hospital knew or should have known that its patient should have been involuntarily committed based on mental disorders, drug addiction and propensities toward violence and flight from authorities, pursuant to the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1983, ch. 91½, par. 1—119). The patient was not so committed, left the hospital without approval, and in the course of a subsequent high-speed chase by the police, the plaintiff's decedent was severely injured and died. Our supreme court reversed the appellate court on the basis of lack of any allegation in the complaint that the patient was either involuntarily or voluntarily committed to the mental health facility (the defendant Condell) and concluded that she was admitted by her own request. Within this same context of mental health commitment and the constitutional implications of the resultant loss of liberty, the supreme court found no duty under the plaintiff's theory of one who should have been committed nor under

section 319 of the Restatement of Torts. (Restatement (Second) of Torts §319 (1965).) The court also noted that "plaintiff concedes that his decedent was a stranger to [defendants] Condell and Holt" (*Condell*, 119 Ill. 2d at 503, 520 N.E.2d at 49) and found no "special relationship." The supreme court did not reverse the appellate court on its methodology of analysis of the duty question but, rather, on the mental health premise of its reasoning. The appellate court in *Johnson* noted the essential elements of a duty analysis to be as follows:

> "Factors bearing on the issue of duty include the foreseeability of subsequent occurrences, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." (*Johnson*, 146 Ill. App. 3d at 837-39, 496 N.E.2d at 1223.)

This method of analysis tracks *Kirk*:

> "Although the reasonable foreseeability of injury is a key concern in determining whether a duty exists, it is not the only consideration. The question of duty in a negligence action should take into account the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant." (*Kirk*, 117 Ill. 2d at 526, 513 N.E.2d at 396.)

The majority is incorrect in claiming that our supreme court in *Condell* reversed the appellate court in all respects.

Applying the *Kirk* and *Johnson* factors for analysis of duty to the instant case, the circuit court properly denied defendants' motion to dismiss. It is reasonably foreseeable that one who has a contagious disease such as tuberculosis could communicate that disease and that the likelihood of injury through that contact is great. The magnitude of the burden of guarding against this is not great and, in fact, has already been considered; the doctors involved in treating the individual with a communicable disease such as tuberculosis are already under a duty to diagnose that disease, recognize it as a communicable disease, and provide accordingly for the patient's treatment, including confinement if required. The consequences of placing this burden on defendants is essentially to compel them to do what they are already obligated to do. This analysis is further strengthened by the position of plaintiff in this cause as being in a special relationship with the patient. This special relationship heightens the degree of reasonable foreseeability of an injury and the likelihood of that injury when one is discussing a fellow health care professional who is compelled by the mandates and ethics of

the profession as well as the direct order of doctors similarly situated to the defendants in this case to provide care for a person who has a contagious disease; however, in this case, due to defendants' failure to diagnose that contagious disease, the fellow health care professional, the plaintiff in this cause, was not given the opportunity to guard against the harm and likely injury of contracting this contagious disease. The burden of guarding against this injury and the consequences of placing this burden are merely to compel defendants to do what they were already obligated to do.

As noted above, our supreme court in *Kirk* specifically exempted section 319 of the Restatement from its analysis:

"There are types of relationships that give rise to a duty to control a third party's conduct set out in sections 316 to 319 of the Restatement (Second) of Torts (1965), but none are applicable here. These decisions upon which the plaintiff relies are primarily concerned with a custodian's duty and frequently rely on section 319 of the Restatement (Second) of Torts (1965), concerning the 'duty of those in charge of person having dangerous propensities.' There is no allegation here that the plaintiff was negligently released from the hospital, and there is no allegation that McCarthy had dangerous propensities of which the hospital and physicians were aware." 117 Ill. 2d at 530-31, 513 N.E.2d at 398.

In my judgment, the proper disposition of this appeal would be to note that the *Kirk* case specifically excepts section 319 of the Restatement (Second) of Torts and that *Johnson* was reversed on other grounds in *Condell*, apply section 319 to the situation in this cause, further apply the duty analysis of *Kirk* to this cause, and affirm the trial court in its proper conclusion that a duty does, in fact, exist, and that the complaint stated a cause of action.